[728 NYS2d 37]

In the Matter of MANHATTAN PSYCHIATRIC CENTER, Respondent.
ANONYMOUS, Appellant.

First Department, July 26, 2001

## APPEARANCES OF COUNSEL

No appearance for respondent.

*Diane G. Temkin* of counsel (*Marvin Bernstein, Director, Mental Hygiene Legal Service*, attorney), for appellant.

## OPINION OF THE COURT

ELLERIN, J.

We take the opportunity in this case involving the application of "Kendra's Law" to explore the parameters of that statute.

Appellant is a 24-year-old man who was sent to the Mid-Hudson Psychiatric Center following a CPL article 730 finding that he was incompetent to stand trial on felony charges related to striking his father in the eye with a bottle. He was later transferred, on a voluntary basis, pursuant to Mental Hygiene Law § 9.13, to petitioner Manhattan Psychiatric Center (the hospital). In March 2000, a year after the transfer, the hospital, on consent of appellant, petitioned pursuant to Kendra's Law (Mental Hygiene Law § 9.60) for an "assisted outpatient treatment" (AOT) order requiring appellant to submit to treatment as an outpatient following his release from the hospital. The petition was granted, in September 2000, and an order issued for a period of six months. Upon expiration of the order on March 21, 2001, the parties obtained a similar order and appellant remains in a transitional residence pursuant to the treatment plan of the AOT order.

We are concerned here with the proceedings that occurred between March 2000, when the hospital first petitioned for an AOT order, and September 2000, when the court issued the

order. Appellant brought this appeal from two previous determinations of the same court and Justice, entered April 3, 2000, and May 8, 2000, respectively, which denied the hospital's petition. Although the issuance of the September 2000 AOT order moots this appeal as to appellant, the case falls within the exception to the mootness doctrine, because it is likely to be repeated, it involves a phenomenon that typically evades review, and it implicates substantial and novel issues (*Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714-715). It is likely to be repeated either between these parties, given appellant's chronic mental illness, or among other members of the public. It is the kind of situation that typically evades review, because the director of the hospital can file another petition after denial of a previous petition, and retains the authority to release a patient with or without an AOT order (*see* Mental Hygiene Law § 29.15 [a] ["A patient may be discharged or conditionally released to the community by the director of a department facility, if, in the opinion of staff familiar with the patient's case history, such patient does not require active inpatient care and treatment"]). And it implicates substantial and novel issues in that it involves the interpretation of a newly enacted statute balancing the rights of mentally ill persons with the need for public safety, and raises the issue of whether the court exceeded its authority (*see Matter of Chenier v Richard W.*, 82 NY2d 830). Particularly in view of the motion court's struggle to understand its role in an AOT proceeding, as reflected in the record, we believe it is appropriate for us to take this opportunity to offer guidance.

■ Kendra's Law was enacted in 1999 in the wake of the high-profile death of Kendra Webdale on January 3, 1999, as a result of being pushed in front of a moving subway train by Andrew Goldstein, a diagnosed schizophrenic who was not taking his medication. The legislative history of the statute discloses the following legislative findings:

> "The legislature finds that there are mentally ill persons who are capable of living in the community with the help of family, friends and mental health professionals, but who, without routine care and treatment, may relapse and become violent or suicidal, or require hospitalization. The legislature further finds that there are mentally ill persons who can function well and safely in the community with supervision and treatment, but who without such assistance, will relapse and require long periods of hospitalization.

"The legislature further finds that some mentally ill persons, because of their illness, have great difficulty taking responsibility for their own care, and often reject the outpatient treatment offered to them on a voluntary basis. Family members and caregivers often must stand by helplessly and watch their loved ones and patients decompensate. Effective mechanisms for accomplishing these ends include: the establishment of assisted outpatient treatment as a mode of treatment; improved coordination of care for mentally ill persons living in the community; the expansion of the use of conditional release in psychiatric hospitals; and the improved dissemination of information between and among mental health providers and general hospital emergency rooms.

"The legislature further finds that if such court-ordered treatment is to achieve its goals, it must be linked to a system of comprehensive care, in which state and local authorities work together to ensure that outpatients receive case management and have access to treatment services. The legislature therefore finds that assisted outpatient treatment as provided in this act is compassionate, not punitive, will restore patients' dignity, and will enable mentally ill persons to lead more productive and satisfying lives." (*See* L 1999, ch 408, § 2, reprinted in McKinney's Cons Laws of NY, Book 34A, Mental Hygiene Law § 9.60, Historical and Statutory Notes, 2001 Pocket Part, at 54-55).

Assisted outpatient treatment is defined as "categories of outpatient services which have been ordered by the court pursuant to this section," and which

"shall include case management services * * * and may also include * * * services * * * prescribed to treat the person's mental illness and to assist the person in living and functioning in the community, or to attempt to prevent a relapse or deterioration that may reasonably be predicted to result in suicide or the need for hospitalization." (Mental Hygiene Law § 9.60 [a] [1].)

The court may order a patient to obtain assisted outpatient treatment if it finds that:

"(1) the patient is eighteen years of age or older; and

"(2) the patient is suffering from a mental illness; and

"(3) the patient is unlikely to survive safely in the community without supervision, based on a clinical determination; and

"(4) the patient has a history of lack of compliance with treatment for mental illness that has:

"(i) at least twice within the last thirty-six months been a significant factor in necessitating hospitalization in a hospital, or receipt of services in a forensic or other mental health unit of a correctional facility or a local correctional facility, not including any period during which the person was hospitalized or incarcerated immediately preceding the filing of the petition or;

"(ii) resulted in one or more acts of serious violent behavior toward self or others or threats of, or attempts at, serious physical harm to self or others within the last forty-eight months, not including any period in which the person was hospitalized or incarcerated immediately preceding the filing of the petition; and

"(5) the patient is, as a result of his or her mental illness, unlikely to voluntarily participate in the recommended treatment pursuant to the treatment plan; and

"(6) in view of the patient's treatment history and current behavior, the patient is in need of assisted outpatient treatment in order to prevent a relapse or deterioration which would be likely to result in serious harm to the patient or others as defined in section 9.01 of this article; and

"(7) it is likely that the patient will benefit from assisted outpatient treatment." (§ 9.60 [c].)

Section 9.60 (e) sets forth the requirements of a petition for an AOT order, and section 9.60 (h) provides that a hearing be held on such a petition and sets forth the requirements of the hearing. At the hearing on the hospital's petition for an order of assisted outpatient treatment for appellant, held March 9,

2000, appellant's treating psychiatrist, Dr. John Rosenberger, testified that appellant satisfied the above criteria for assisted outpatient treatment, and that assisted outpatient treatment was the least restrictive alternative for him (*see* § 9.60 [h] [4]). Dr. Rosenberger testified that appellant was unlikely to survive safely in the community without supervision, because, without an AOT order, he was unlikely to comply with a treatment plan, but that appellant did not pose a danger to himself or to others so long as he took his medication, and that appellant had said he was willing, if released, to take medications under the doctor's care and to be treated for alcohol and substance abuse. Dr. Rosenberger also testified that appellant had hit his father with the bottle in 1997 because he thought his father was conspiring with his brothers to kill him, and that he had jumped from a five-story building at the age of 18 or 19, fracturing both his legs, after hearing voices in his head. When the court asked Dr. Rosenberger whether, despite this history of violence, he still considered appellant a candidate for this program, Dr. Rosenberger replied, "This law was made for [appellant]."

At the conclusion of the hearing, upon the consent of both parties, the court granted the petition. However, the court held the order and judgment "in abeyance subject to independent psychiatrist concurring in release," and set a further hearing date for March 30, 2000.

An exchange of correspondence ensued among the court, counsel for the hospital (the Attorney General's office by Edward J. Curtis, Jr.), and counsel for appellant (Mental Hygiene Legal Service). By letter dated March 10, 2000, Mr. Curtis requested that the court reconsider its order, on the grounds that there was no legal basis for appointing an independent psychiatrist in this proceeding and,

> "[m]ore to the point, we are alarmed at the fact that the hospital may have no legal means to retain the patient or assure that he receives appropriate outpatient treatment until the independent expert has examined him and issued a report. Obviously, the hospital brought this proceeding because it contemplated discharging the patient and because it believed that Assisted Outpatient Treatment was a viable alternative to continued hospitalization. * * * However, as matters stand now, he could be discharged to the community with no court order in place requiring him to submit to treatment and a history of not complying with treatment."

On March 14, 2000, the court sought an opinion from the Attorney General's office as to whether:

"1. The director as defined determines whether a patient qualifies for release upon compliance with the statutory criteria and not the Judge. In other words, unlike C.P.L. 330.20 (12) with release upon an order of conditions, the Judge cannot consider at the hearing whether the patient is a danger to himself or others if released.

"2. Section (e) (2) (ii) does not give a Judge the authority to consider the issue of dangerousness when it states that the hearing 'need not be limited to the stated facts.'

"3. A Judge has no discretion to deny relief once the statutory criteria are met."

In his March 24 reply, Mr. Curtis pointed out initially that, in contrast to a CPL 330.20 hearing concerning a patient who has been found not responsible as a result of mental disease or defect for having committed a crime:

"a Kendra's Law hearing involves a civilly committed patient, whose course of treatment is supervised by the hospital director. Article 9 of the Mental Hygiene Law gives the director discretion to decide whether to apply to the court for an order authorizing retention of the civil patient (*see, e.g.*, MHL §§ 9.13 (b), 9.31, 9.33), to apply to the court for a Kendra's Law order authorizing AOT for the patient upon discharge (MHL § 9.60), or to release the civil patient without conditions (*see, e.g.*, MHL §§ 29.15 [a])."

Mr. Curtis explained that the court's role in a Kendra's Law proceeding is to decide whether the petitioner has proved, by clear and convincing evidence, that the patient meets the statutory criteria for AOT and that there is no appropriate and feasible less restrictive alternative (*see* Mental Hygiene Law § 9.60 [c], [j]). Thus, "while it is within the discretion of the hospital director to determine whether to apply for an order, it is for the Court to determine whether the director's petition meets the statutory prerequisites for such an order." Of course, one of those prerequisites is the likelihood that the patient, if released without assisted outpatient treatment, will become a danger to himself or others (§ 9.60 [c] [6]). The court was obvi-

ously, and understandably, troubled that such a patient may be released at all. However, when a hospital seeks an AOT order for one of its patients, it has already made the decision to release the patient, and that decision is not at issue in the AOT proceeding. Kendra's Law is intended to insure that the patient residing in the community receives the treatment that will, *inter alia*, prevent him becoming a danger to himself or others. Thus the question for the court is not whether the patient should be released, but whether he should be released with or without an AOT order, i.e., whether the hospital has shown, *inter alia*, that the patient cannot be left to his own devices and must be assisted in obtaining outpatient treatment after he is released.

As to the court's second inquiry, section 9.60 (e) (2) (ii) provides that the petition shall state "facts which support such petitioner's belief that the person who is the subject of the petition meets each criterion, provided that the hearing on the petition need not be limited to the stated facts." Given the high standard of proof imposed, i.e., clear and convincing evidence (§ 9.60 [j] [2]), the petitioner may want to offer more evidence that the patient meets the criteria than is set forth in the petition, for example, more evidence that the patient is likely to become a danger to himself or others if he is released without an AOT order. The evidence, whether it consists of the facts set forth in the petition or includes facts not stated in the petition, is offered to prove that the patient, who is 18 years of age or older (§ 9.60 [c] [1]) and suffering from a mental illness (§ 9.60 [c] [2]), is unlikely to survive safely in the community without supervision (§ 9.60 [c] [3]), has a history of lack of compliance with treatment for mental illness that has (i) at least twice within the last 36 months been a significant factor in necessitating hospitalization or (ii) resulted in one or more acts of violence toward self or others within the last 48 months (§ 9.60 [c] [4]), is unlikely to participate voluntarily in the recommended treatment (§ 9.60 [c] [5]), is in need of assisted outpatient treatment in order to prevent a relapse or deterioration that would likely result in serious harm to himself or others (§ 9.60 [c] [6]), and is likely to benefit from assisted outpatient treatment (§ 9.60 [c] [7]). It is not an invitation to the court to consider the issue of dangerousness in respect of a decision to release the patient.

Moreover, a person who is already residing in the community can be the subject of a petition for AOT (*see, e.g.*, § 9.60 [e] [1] [i] [persons who may initiate a petition include "any person

* * * with whom the subject of the petition resides"]; § 9.60 [e] [2] [iii] [the petition shall state "that the subject of the petition is present, or is reasonably believed to be present, within the county where such petition is filed"]; § 9.60 [h] [3] ["If the subject of the petition does not consent * * * the court may order * * * the subject of the petition [taken] into custody and transport[ed] * * * to a hospital for examination by a physician"]). For a person residing in the community, the alternative to dismissal of a petition because the criteria for AOT have not been met (§ 9.60 [j]) is not admission to a hospital but continued residence in the community without a court order to obtain treatment.

As to the court's third inquiry, Mr. Curtis advised that, on its face, the statute appears to give the court discretion to deny an AOT petition, even if the court finds by clear and convincing evidence that the criteria have been met and that there is no appropriate and feasible less restrictive alternative (*see*, § 9.60 [c] ["A patient *may* be ordered to obtain (AOT)" (emphasis added)]; § 9.60 [j] [2] ["the court *shall be authorized* to order (AOT)" (emphasis added)]). He argued, however, that in appellant's case the record amply supports a decision to order AOT. We note that, if the court finds that the criteria have *not* been met, it "*shall* dismiss the petition" (§ 9.60 [j] [1] [emphasis added]). Thus, the court's discretion runs only to the least restrictive outcome. In other words, a court may decide not to order AOT for a person who meets the criteria, but it may not decide to order AOT for a person who does not meet the criteria. This is consistent with the underlying concern of the Legislature in enacting Kendra's Law, i.e., to place as few restrictions as possible on the liberty of persons who, though suffering from mental illnesses, "are capable of living in the community with the help of family, friends and mental health professionals" (L 1999, ch 408, § 2 ["The legislature therefore finds that assisted outpatient treatment as provided in this act is compassionate, not punitive, will restore patients' dignity, and will enable mentally ill persons to lead more productive and satisfying lives"]; *see also*, § 9.60 [h] [4]; [i] [2] [treatment must be the "least restrictive alternative"]; § 9.60 [j] [2] [the court must find that "there is no appropriate and feasible less restrictive alternative"]; § 9.60 [n] ["Failure to comply with an order of assisted outpatient treatment shall not be grounds for involuntary civil commitment or a finding of contempt of court"]). It is also consistent with the constitutional protection against deprivation of liberty without due process of law (*see Matter of*

*Kesselbrenner v Anonymous,* 33 NY2d 161, 167, quoting *Covington v Harris,* 419 F2d 617, 623 [" '(T)he principle of the least restrictive alternative consistent with the legitimate purposes of a commitment * * * inheres in the very nature of civil commitment' "]).

In any event, no measure of discretion would be sufficient to permit a court to bar the release of a hospitalized patient (or, by extrapolation, to order the involuntary admission of an unhospitalized person) as an alternative to ordering AOT, because Kendra's Law does not place that decision before the court. The statute provides that "[n]othing in this section shall be construed to affect the ability of the director of a hospital to receive, admit, or retain patients who otherwise meet the provisions of this article regarding receipt, retention or admission" (§ 9.60 [q]). Moreover, a voluntary patient such as appellant may be retained on an involuntary basis only upon application by the hospital to the court for an order of retention, on notice, with the attendant provisions for a hearing (*see* § 9.13 [b]). The court's role in an AOT proceeding is limited to determining whether or not the petitioner has proved that it is justified in seeking to restrict the patient's liberty to the extent of ordering him to obtain outpatient treatment. If the hospital has not so proved, then the court may not restrict the patient's liberty even to that extent, and must dismiss the petition. The result is that the subject is released from the hospital (or remains in the community) without conditions.

The provision of Kendra's Law concerning failure to comply with assisted outpatient treatment (§ 9.60 [n]) is instructive. Even a person who is released from a hospital with an AOT order and fails to comply with the order may not as a result be returned to the hospital and retained involuntarily. He may be brought to a hospital and retained there for up to 72 hours for "observation, care and treatment and further examination" to determine whether he has a mental illness and is in need of involuntary care and treatment in a hospital. But "[i]f at any time during the seventy-two hour period the person is determined not to meet the involuntary admission and retention provisions of this article, and does not agree to stay in the hospital as a voluntary * * * patient, he or she must be released."

The independent psychiatrist appointed at the request of the court in appellant's case testified that appellant would not benefit from assisted outpatient treatment because he has a history of noncompliance, lacks insight into his illness and has

very bad judgment. On the other hand, the psychiatrist opined that if released appellant would not be dangerous if he took his medication. But he said the authorities would not know that appellant was not taking his medication until it was too late. The psychiatrist acknowledged that he had no experience with AOT orders, and it was apparent from his testimony that he was not very familiar with the provisions of Kendra's Law for monitoring compliance with the court-ordered treatment plan (*see* § 9.60 [a] [9] [an appointed program coordinator is responsible for the oversight and monitoring of assisted outpatient treatment programs]; § 9.60 [i] [1] [the written treatment plan must include, *inter alia*, "case management services or assertive community treatment teams to provide care coordination"]; § 9.60 [n] [procedures for handling a noncompliant patient]). Most important, he testified that appellant should not be released from the hospital, and the court, after holding the March 9 order in abeyance "subject to independent psychiatrist concurring in release," denied the petition because it believed, based on the psychiatrist's testimony, that appellant would be dangerous if released. However, as indicated, the issue of whether or not appellant should be released from the hospital was not properly before the court in this proceeding. The only issue before the court was whether or not the hospital had proved that appellant should be ordered to obtain assisted outpatient treatment after his release.

Accordingly, the order and the judgment of the Supreme Court, New York County (William McCooe, J.), entered April 3, 2000 and May 8, 2000, respectively, which denied the hospital's petition for an assisted outpatient treatment order pursuant to Mental Hygiene Law § 9.60, should be reversed, on the law, without costs, and it is declared that the petition should have been granted.

Motion seeking leave to proceed anonymously granted.

ROSENBERGER, J. P., NARDELLI, TOM and ANDRIAS, JJ., concur.

Order and judgment, Supreme Court, New York County, entered April 3, 2000 and May 8, 2000, respectively, reversed, on the law, without costs, and it is declared that the petition for an assisted outpatient treatment order pursuant to Mental Hygiene Law § 9.60 should have been granted. Motion seeking leave to proceed anonymously granted.