*54 OPINION OF THE COURT
Norman C. Ryp, J.
A. Issue(s)
What are the procedures and standards applicable in the very first “Kendra’s Law” jury appeal under Mental Hygiene Law § 9.60 (m) and § 9.35? Substantial novel issues of first impression exist! Do such differ from a traditional civil jury trial, under CPLR article 41? If so, how?
B. Facts and Procedural History
During the summer of 1999, Ms. C. (then a 41-year-old homeless mother of a 14-year-old son raised by his father and a 2-year-old daughter in foster care), was arrested and charged with the crimes of third degree burglary, third degree criminal mischief and fifth degree criminal possession of stolen property. On August 18, 1999, by order of Criminal Court Judge Laura A. Ward, Ms. C. was involuntarily committed to Elmhurst Hospital Center (E.H.C.) — a New York City Health and Hospitals Corporation facility affiliated with Mt. Sinai School of Medicine, pursuant to CPL article 730. Ms. C.’s E.H.C. commitment was to determine if she was mentally competent to stand trial and to assist in her defense. Thereafter, Ms. C. was found both unable to assist in her own defense and mentally unfit to stand trial. This conclusion was based on competency evaluations by Dr. Toni-Lynne Calabrese, a psychiatrist, on August 19,1999 and Dr. Jennifer Blitz, a psychologist, on August 20, 1999, patient observation and a review of Ms. C.’s August 12, 1999 Bellevue Hospital Center records. Subsequently, on September 18, 1999, Ms. C. was then transferred from E.H.C. to Manhattan Psychiatric Center (M.P.C.) — a New York State operated psychiatric hospital, as an incapacitated person.
During her stays at E.H.C. and M.P.C., Ms. C. was found to be suffering from mental illness, including schizo-affective and bipolar disorders, plus ancillary conditions such as alcohol and substance abuse. In January 2000, after partly successful inpatient treatment, her treating physician, Dr. Edward Maung-U, determined that she no longer needed inpatient mental health care. Ms. C., according to Dr. Maung-U’s medical records plus a January 25, 2000 affidavit supporting the January 25, 2000 petition by M.P.C., needed assisted outpatient treatment (A.O.T.) in a supervised facility. This determination was based upon Ms. C.’s ongoing mental illnesses, alcohol and drug abuse, unlikelihood of her safe survival in the community, absent family support, her history of noncompliance and her denial of her mental illness(es). An A.O.T. plan was designed *55 to provide Ms. C. more freedom, assure intake of her medication, assure that she would follow her treatment program, and assure that she did not hurt herself or others. The above January 25, 2000 petition in this court sought an order authorizing A.O.T. for Ms. C. under Mental Hygiene Law § 9.60, also known as Kendra’s Law.[1]
A hearing on this petition for A.O.T. was held before Justice Lucindo Suarez of this court on February 24, 2000. Ms. C. was represented at the hearing by D. Stern, Esq. of Mental Health Legal Services. As a result of this hearing, Justice Suarez, by order dated February 24, 2000 (index No. 530732-98), directed six months of A.O.T. for Ms. C. after determining that she met the criteria delineated in Mental Hygiene Law § 9.60 (c). According to this February 24, 2000 order, the A.O.T. directed was to be “the least restrictive treatment that is appropriate and feasible.”
The A.O.T. designed for Ms. C., pursuant to Mental Hygiene Law § 9.60 (i) (1), included evaluation of potential need for and adjustment of medication, specifically antipsychotics, and distribution of such medication if necessary. She was also required to reside in a supervised community residence, attend substance abuse counseling, participate in intensive case management treatment and attend therapy for her mental illnesses. According to the A.O.T., Ms. C.’s compliance with these edicts would be closely monitored. Shortly thereafter on March 14, 2000, and compilation of Ms. C.’s A.O.T. mandates, she was transferred from M.P.C. to River Edge Community Residence (R.E.C.R.), a supervised half-way house on Ward’s Island in Manhattan, New York. R.E.C.R. is associated with Federation Employment and Guidance Service (F.E.G.S.). Assigned to Ms. C. were: Donna Harris, a social worker and Ms. C.’s Intensive Case Manager, and Dr. Alfred Ainbinder, Ms. C.’s psychiatrist at the Mental Illness and Chemical Abuse (M.I.C.A.) day treatment program under F.E.G.S.
Thereafter, on August 16, 2000 (almost six months after the February 24, 2000 court order), Eileen Consilvio, RN, MS, as the Executive Director of M.P.C., petitioned the court to extend *56 Ms. C.’s A.O.T. program for an additional one year, pursuant to Mental Hygiene Law § 9.60 (k). Accompanying and in support of the petition was the affidavit of Dr. Alfred Ainbinder. Dr. Ainbinder, Ms. C.’s psychiatrist at the F.E.G.S. continuing day treatment program, performed a psychiatric evaluation of Ms. C. on August 16, 2000 and had observed her during her time in the F.E.G.S. program. Dr. Ainbinder also devised a proposed treatment plan for Ms. C. under Mental Hygiene Law § 9.60 (i) (1). Based on the August 16, 2000 petition, affidavit and the detailed treatment program, a hearing was held before Justice Stanley Parness of this court, on August 31, 2000, whereat Ms. C. was represented by counsel, Jeffrey Karan, Esq. Prior to the August 31, 2000 hearing, Ms. C. had opportunity to dispute the petition and affidavit’s claims, and file an order to show cause as to why an order should not be issued authorizing and requiring continued A.O.T. in accordance with the proposed treatment plan dated August 16, 2000, and pursuant to Mental Hygiene Law § 9.60. No order to show cause was submitted by or on Ms. C.’s behalf. As a result, after a hearing on August 31, 2000, Justice Stanley Parness granted M.P.C.’s petition to extend Ms. C.’s A.O.T. until August 31, 2001.
Frustrated by the continuance and encouraged by her successes in the A.O.T. program (e.g., she remained drug free while participating in the M.I.C.A. day treatment program), believing that the mandated antipsychotic medicine was unnecessary, and wanting to have more freedom, Ms. C. filed an order to show cause under Mental Hygiene Law § 9.60 (m) to appeal (or review) the August 16, 2000 order with a Mental Hygiene Law § 9.35 jury trial. This order to show cause was signed by Justice Helen E. Freedman on September 22, 2000 and entitled Ms. C. to a statutorily created jury appeal (or review) trial to review Justice Parness’ August 31, 2000 order. Justice Phyllis Gangel-Jacob granted the order on October 27, 2000. The jury appeal (or review) trial was assigned to this court and tried March 2-8, 2001. Ms. C. was represented by counsel, Jeffrey Karan, Esq., who, with Gillian Fisher, Esq., counsel for Commissioner Dr. Neal Cohen, New York City Mental Health, Mental Retardation and Alcoholism Services (N.Y.C.M.H.M.R.A.S.) Director of Community Services, selected a jury of six and four alternates.
On the jury appeal (or review), the evidence relied upon during the August 31, 2000 hearing before Justice Stanley Parness qualifying Ms. C. for an extension of A.O.T. was presented *57 and reviewed, including excerpts of: Ms. C.’s Manhattan Psychiatric Hospital records (PX-1); Ms. C.’s F.E.G.S. reports (PX-2); Ms. C.’s homeless shelter records (PX-3); Ms. C.’s Bellevue Hospital Records — specifically, her individual case management notes (PX-4); and Ms. C.’s Elmhurst Hospital Records (PX-5). Witnesses and testimony for N.Y.C.M.H.M.R.A.S. included Dr. Alfred James Ainbinder, the F.E.G.S. regional associate medical director, who interviewed all incoming A.O.T. participants, including Ms. C. He testified as to the severity of Ms. C.’s mental illnesses, her general inability to function within the greater community and her cyclical failure to comply with treatment. Dr. James Lynch, a board-certified psychiatrist who examined Ms. C., testified as to her history of mental illnesses as well as her present condition and her need for treatment. Dr. Toni-Lynne Calabrese, attending psychiatrist at Bellevue Hospital, testified in detail as to Ms. C.’s mental illnesses, actions, psychoses and need for treatment. Albert Ernest Grenon, the father and primary caretaker of his and Ms. C.’s son, testified that he lived with Ms. C. for 4V2 years (1985-1989), was generally aware of Ms. C.’s mental illnesses and addictions and saw Ms. C. periodically when their son would visit his mother. Ms. C. was the only witness who testified on her behalf, relaying her understanding of her condition and management of her illness and life if the A.O.T. order was overturned.
Specifically, the medical records in evidence indicated, and Ms. C. testified before this court, that between February 24, 2000 and March 1, 2001 she remained drug and alcohol free, attended most of her treatment programs for her mental illnesses and was generally compliant with her 9:00 p.m. R.E.C.R. curfew, Ms. C. admitted, however, and evidence supported the contention, that she was reluctant and resistant to taking her prescribed medication and in denial of the scope and severity of her mental illnesses. Ms. C. also testified that the R.E.C.R. curfew, programs’ attendance and medication requirements were unduly restrictive. Furthermore, Ms. C. stated that should she prevail in negating the August 16, 2000 order at issue, she would not take the prescribed pharmacological medication but would try homeopathic herbal remedies, chanting, meditating and writing poetry to alleviate her problems and illnesses. Lastly, when questioned by this court as to how she would survive without A.O.T. and R.E.C.R., she could offer no friends or family support to assist her, or a place where she could live, or a way to support herself once released.
*58 C. Parties’ Contentions
Before opening statements, the first contentious issue emerged and required immediate resolution. That issue was the role of each party under Mental Hygiene Law § 9.60 (m). It was clear that not only was there a disagreement as to the roles of the parties under this new law, but that there was genuinely valid confusion as to the intent of Mental Hygiene Law § 9.60 (m) as an avenue for appeal (or review) or for a new hearing. In addition to the classification of the procedure, there appeared the entangled questions of how the parties should be denominated and which had the burden of proof in this jury appeal (or review). The court now addresses these and other ancillary issues in practical order.
i. Does Mental Hygiene Law § 9.60 (m) contemplate an “appeal” from (or review of) or a new hearing upon the underlying order for A.O.T. or an extension of A.O.T.?
Counsel for Ms. C. contends, though acknowledging Mental Hygiene Law § 9.60 (m) is entitled “Appeals,” that the language of the section, “[r]eview of an order issued pursuant to this section shall be had in like manner as specified in [Mental Hygiene Law §]9.35,” morphs the proceeding into a review of and new hearing on the original facts and circumstances of the August 16, 2000 order, and not a traditional appeal as described in CPLR article 55. Ms. C. further argued that even though it was a review arid hearing concerning the August 16, 2000 order, the medical records and circumstances subsequent to August 16, 2000 were all relevant.
In response, counsel for the New York City Commissioner of Mental Health, Mental Retardation and Alcoholism Services contends that the language of Mental Hygiene Law § 9.60 (m) is clear and unambiguous. N.Y.C.M.H.M.R.A.S.’s counsel argues that Mental Hygiene Law § 9.60 (m) is entitled “Appeals” and the remedy sought by Ms. C., to wipe out, in toto, the August 16, 2000 order, is a remedy obtained by a successful appeal. Thus, according to N.Y.C.M.H.M.R.A.S/s counsel, the title, language and potential outcomes of the procedure described in Mental Hygiene Law § 9.60 (m) wholly support her contention that a motion under Mental Hygiene Law § 9.60 (m) is an appeal (or review) of the underlying order (herein the August 16, 2000 extension of Ms. C.’s involvement in the A.O.T. *59 program). Furthermore, as such, N.Y.C.M.H.M.R.A.S.’s counsel submits that the only relevant evidence is that which was before Judge Stanley Parness on August 16, 2000.
ii. Whether the party who or which appeals from (or seeks review of) an order for continued assisted outpatient treatment, under Mental Hygiene Law § 9.60 (m), is the appellant or appellee, respondent or petitioner?
According to Ms. C.’s counsel, under his assumption that Mental Hygiene Law § 9.60 (m) describes a review of and new hearing upon the underlying August 16, 2000 order, Ms. C. would be the respondent and the N.Y.C.M.H.M.R.A.S. would be the petitioner because they were the respondent and petitioner, respectfully, in the underlying proceeding before Justice Parness. Thus, counsel contends that in a rehearing, as opposed to an appeal (or review), the parties would retain their original denominated positions.
To the contrary, N.Y.C.M.H.M.R.A.S. Commissioner Neal Cohen’s counsel argues that because Ms. C. is actually appealing the August 16, 2000 decision and order seeking a jury to find the negative of the original decisional conclusion, Ms. C. is the appellant and the N.Y.C.M.H.M.R.A.S., defending the August 16, 2000 decision, is the respondent.
iii. What is the burden(s) of proof under Mental Hygiene Law § 9.60 (m) and which party has the burden(s) of proof under Mental Hygiene Law § 9.60 (m)?
As to who should rightfully bear the burden of proof, Ms. C.’s counsel contends that consistent with his reading of Mental Hygiene Law § 9.60 (m) as a rehearing, the burden of proof would be foisted upon the original petitioner, the N.Y.C.M.H.M.R.A.S., as in the original hearing concerning Ms. C.’s need for A.O.T.
The Commissioner’s counsel asserts that because Mental Hygiene Law § 9.60 (m) is an appeal (or review), the party appealing — the appellant, herein Ms. C. — must shoulder the burden of proof.
D. Applicable Law
i. Background and legislative history
Although ultimately catalyzed into law by the tragic 1999 death of Kendra Webdale at the hands of the mentally ill *60 Andrew Goldstein, the fundamental premises and policies of Mental Hygiene Law § 9.60 (m), also known as Kendra’s Law, were first implemented in a pilot program. The pilot program involved involuntary outpatient treatment, the New York City Director of Community Services, the President of the New York City Health and Hospitals Corporation and Bellevue Hospital. (See, Mental Hygiene Law § 9.61, also known as the Bellevue Project.)[2] There was much discussion and debate in the State Legislature before instituting the Bellevue Project.
Two areas of significant concern were: (1) patients’ civil rights, and (2) their due process in the involuntary outpatient treatment program. As a result, protection of these sacred values was expressly provided in two different and distinct subdivisions of Mental Hygiene Law § 9.61, as follows: (i) “Application for an order to stay, vacate or modify,” and (j) “Appeals.” The pilot program was supported and in part created by Acting Speaker Madam Elizabeth Connelly (D-Richmond County) of the New York State Assembly, who played an instrumental role in the passage of Kendra’s Law, and was passed by the entire Legislature. The Bellevue Project went into effect on July 1, 1995 and its success coupled with the Webdale tragedy germinated Mental Hygiene Law § 9.60 which was enacted on August 9, 1999 and became comprehensively effective as of November 7, 1999. Mental Hygiene Law § 9.60 absorbed and expanded the Bellevue Project.
Although there appears to be no record of complaints or any shortcomings of Mental Hygiene Law § 9.61 (i) and (j), the topics of right to counsel, civil rights, due process, notice, jury trial appeals and rehearings were again addressed and debated by the New York State Legislature contemplating Kendra’s Law.[3] As a result, Mental Hygiene Law § 9.60 (l) “Application for an order to stay, vacate or modify,” and (m) “Appeals,” reflect almost verbatim the language and intentions of the above-noted Mental Hygiene Law § 9.61 (i) “Application for an order to stay, vacate or modify,” and (j) “Appeals,” respectively. Furthermore, after the passage and implementation of Kendra’s Law, Justice Anthony J. Cutrona, in Matter of James D. (185 Misc 2d 836 [Sup Ct, Kings County 2000]), held that Ken *61 dra’s Law did not violate the Equal Protection Clause of either the New York State or United States Constitution. Similarly, Justice Charles A. LaTorella, Jr. of Supreme Court, Queens County, in Matter of Martin (NYLJ, Jan. 9, 2001, at 31, col 6), held Kendra’s Law constitutional in the due process violation action. The court stated that “[t]he statute is mindful of * * * the civil liberties of the patients, while protecting the vital interest of society and the safety of its citizens.” (Id., at 32, col 4.)
ii. Jury appeal (or review) trial
Mental Hygiene Law § 9.60 (m) provides that the appeal of an original A.O.T. order or its extension “be had in like manner as specified in section 9.35 of this article.” Mental Hygiene Law § 9.35 relevantly reads, “Such justice shall cause a jury to be summoned and shall try the question of the mental illness and the need for retention of the patient so authorized to be retained.” While it is unique that an appeal (or review) would be held before a jury, the United States and specifically New York State have a long history of providing juries of one’s peers to determine factual issues of mental illness with respect to competency hearings and the need for involuntary retention. It is a natural consequence of an American’s inalienable right to “the Blessings of Liberty” under the United States Constitution and “Freedom” under the New York State Constitution. (See, US Const Preamble; NY Const Preamble; Matter of Launcelot T. v Mullen, 264 AD2d 697 [2d Dept 1999].)
This use of a jury began as advisory assistance to the court and was borrowed from the British who required that for a “lunatic” to obtain a writ de lunático inquirendo, a jury must be summoned to determine if the person had a mental illness such that the person needed confinement or deprivation of control over property. (Matter of Robert C. v Wack, 167 Misc 2d 677 [Sup Ct, NY County 1995], citing Sporza v German Sav. Bank, 192 NY 8 [1908].) Eventually the jury’s advisory assistance was vested as a constitutional right. For example, New York’s first Constitution provided, “trial by jury, in all cases in which it hath heretofore been used in the colony of New York, shall be established and remain inviolate forever.” (NY Const art XLI [1777].) This concept has been carried forth in similar form through the various provisions of the State’s Constitution including the most recent version which guarantees a right to trial by jury “in all cases in which it has heretofore been guaranteed by constitutional provision.” (NY Const, art I, § 2; *62 see also, Matter of Arnold A. v Sanchez, 166 Misc 2d 493 [Sup Ct, Bronx County 1995].)
Specifically, the right to a jury trial on the “fact of lunacy” became a statutory right in 1842. (L 1842, ch 135, § 21.) Over the years, it evolved as the Legislature, with modernized language, crafted the right to a jury trial as one to determine “mental illness and the need for * * * retention.” (L 1972, ch 251, § 31.35; see also, Launcelot T. v Mullen, 264 AD2d 697 [2d Dept 1999].) Most recently, the provision can be found manifested in Mental Hygiene Law § 9.35 and its tributary, Mental Hygiene Law § 9.60 (m), which are both applicable herein. (See, Matter of Daniel R. v Wack, 167 Misc 2d 74 [Sup Ct, NY County 1995].) Specifically, with respect to the case at bar, a person subject to A.O.T. under Kendra’s Law may appeal an A.O.T. order or an extension of an original A.O.T. order before a jury as in Mental Hygiene Law § 9.35. Thus, under Mental Hygiene Law § 9.60 (m), this right to a jury on appeal is similarly limited to the determination of “mental illness and the need for retention.” (Mental Hygiene Law § 9.35.)
iii. Does Mental Hygiene Law § 9.60 (m) constitute an appeal (or review) of or a new hearing on the underlying order?
Counsel for Ms. C. correctly quotes Mental Hygiene Law § 9.60 (m), but errs in his interpretation of that section. Mental Hygiene Law § 9.60 provides two distinct avenues for addressing and reviewing A.O.T. orders. Mental Hygiene Law § 9.60 (l) is entitled “Application for an order to stay, vacate or modify.” It reads, “In addition to any other right or remedy available by law with respect to the order for assisted outpatient treatment, the patient, mental hygiene legal service, or anyone acting on the patient’s behalf may apply on notice * * * to stay, vacate or modify the order.” As distinguished from Mental Hygiene Law § 9.60 (l), section 9.60 (m) is entitled “Appeals.” It reads, “Review of an order issued pursuant to this section shall be had in like manner as specified in section 9.35 of this article.” The pertinent part of Mental Hygiene Law § 9.35 uniquely provides that an appeal under section 9.60 (m) entitles the appellant to a jury trial before the State’s Supreme Court. Based on the language of the statute, the debate and discussion surrounding Mental Hygiene Law § 9.61 and the Kendra’s Law Assembly and Senate Debate Transcripts, Bill Jacket and Governor’s Program Bill, which states that “Subdivision (m) would authorize an appeal of the [underlying] order,” this court finds that an action brought under *63 Mental Hygiene Law § 9.60 (m) is an appeal as delineated in CPLR article 55 with the rare, statutorily created exception that the appeal can be heard before a State Supreme Court jury. Seemingly, this unique attribute is intended to provide additional due process and reduce the singular power of a judge to order or extend A.O.T., whose only discretion is whether the N.Y.C.M.H.M.R.A.S. met their burden of proof by clear and convincing evidence (Mental Hygiene Law § 9.60 |j] [2]) or not, and if not, to dismiss N.Y.C.M.H.M.R.A.S.’s A.O.T. petition if there is no appropriate and feasible less restrictive alternative (Mental Hygiene Law § 9.60 [j]; see, Matter of Manhattan Psychiatric Ctr. v Anonymous, 285 AD2d 189 [1st Dept 2001]).
iv. Is the party which or who appeals an order for continued assisted outpatient treatment, under Mental Hygiene Law § 9.60 (m), the appellant or petitioner?
There is no question that in the underlying Mental Hygiene Law § 9.60 petition N.Y.C.M.H.M.R.A.S., proponent, was the petitioner and Ms. C., opponent, was the respondent. But, before this court is an appeal (or review) of Justice Parness’ decision/order of August 16, 2000. Herein the roles are reversed, with Ms. C. the proponent (normally petitioner or plaintiff), and N.Y.C.M.H.M.R.A.S. as the opponent (normally a respondent or defendant).
By definition, the party who takes an appeal (or review) from one court or jurisdiction to another or who sues out of writ of error is an appellant. (Black’s Law Dictionary 89 [5th ed].) Thus, because this court finds the action before it, under Mental Hygiene Law § 9.60 (m), to be a CPLR article 55 appeal, and because it was Ms. C. who initiated the action bringing it from Justice Stanley Parness to this court, Ms. C. is the appellant and New York City Commissioner of Mental Health, Mental Retardation and Alcoholism Services is the respondent. (CPLR 5511.) Only if this action were brought under Mental Hygiene Law § 9.60 (Z) to vacate or modify the underlying order due to a change in present circumstances would the N. Y.C.M.H.M.R.A.S. be the petitioner and Ms. C. the respondent, as in the initial order.
v. What is the burden of proof under Mental Hygiene Law § 9.60 (m)?
*64 Which party has the burden of proof under Mental Hygiene Law § 9.60 (m)?
Mental Hygiene Law § 9.60 (k) dictates that applications to extend A.O.T. for an additional period of treatment, as was the August 16, 2000 order which extended Ms. C.’s stay in the A.O.T. program for one year, shall “be in accordance with the provisions of the foregoing subdivisions of this section.” Mental Hygiene Law § 9.60 (j) (3) provides for disposition of petitions, and states that the court must find by clear and convincing evidence that the subject of the petition meets the criteria for A.O.T. to grant the petition. (See also, Matter of John P., 265 AD2d 559 [2d Dept 1999].) It is this same standard, then, that a jury must use and meet to evaluate the relevant evidence in a Mental Hygiene Law § 9.60 (m) appeal to uphold or reverse and remand an underlying order.
Here, as in all appeals and similarly under Mental Hygiene Law § 9.33, the party who bears the burden of proof, of proving by clear and convincing evidence that an order is in error because the criteria established in Mental Hygiene Law § 9.60 (c) for A.O.T. were not sufficiently met, is the appellant, Ms. C. (CPLR art 55; Matter of Parthymuller, 106 Misc 2d 893 [Sup Ct, Suffolk County 1980]; see also, Matter of Manhattan Psychiatric Ctr. v Anonymous, 285 AD2d 189 [1st Dept 2001] [wherein the appealing A.O.T. patient was denominated the “appellant” and Manhattan Psychiatric Center named as “respondent” on the appeal].)
vi. Can the court order an independent medical or psychiatric examination during a Mental Hygiene Law § 9.60 (m) proceeding?
During a conference with counsel and Ms. C.’s testimony at trial, Ms. C. indicated that she believed that she had made progress in the A.O.T. program, did not need nor want to take the prescribed antipsychotic medication and wanted more freedom. For what Ms. C. and counsel describe as a change in circumstance as opposed to an initially inaccurate finding that she was in need of A.O.T., the appropriate action should have been a review of the August 16, 2000 order continuing Ms. C.’s A.O.T. until August 16, 2001 under Mental Hygiene Law § 9.60 (l), which can be utilized upon the next court order if necessary. Again, Mental Hygiene Law § 9.60 (l) is the appropriate ave *65 nue for staying, vacating, or modifying an existing order due to a change of circumstances. Ms. C.’s counsel’s reliance on Mental Hygiene Law § 9.60 (m) to presently vacate the existing order of August 16, 2000 is neither proper nor does it morph Mental Hygiene Law § 9.60 (m) into Mental Hygiene Law § 9.60 (l) thereby providing for a new hearing based on Ms. C.’s present condition where new evidence could be introduced.
Rather, as counsel for N.Y.C.M.H.M.R.A.S., Ms. Gillian Fisher argues, and this court finds, the present procedure is an appeal (or review) of the August 16, 2000 order. Thus, the only evidence subject to review is that which was relied upon by N.Y.C.M.H.M.R.A.S. to determine whether Ms. C. needed A.O.T. in August 2000 and, therefore, an extension of the initial February 24, 2000 order for A.O.T. (per Suarez, J.) under Mental Hygiene Law § 9.60 (k). (Burchell v Cimenti, 38 AD2d 897 [1st Dept 1972], citing People ex rel. Day v Bergen, 53 NY 404 [1873]; 4 NY Jur 2d, Appellate Review § 596.) When reviewing the August 16, 2000 order, the court, or in this case the jury as the trier of fact, may not consider new evidence such as a court-ordered psychiatric examination. (CPLR art 55; see, Matter of Manhattan Psychiatric Ctr. v Anonymous, 285 AD2d 189 [1st Dept 2001].)
vii. What power and/or authority, if any, does the trial court, sitting as an appellate (or review) court pursuant to Mental Hygiene Law § 9.60 (m), have to overturn, modify or adjust the jury verdict?
Ordinarily, after the conclusion of a CPLR article 41 civil jury trial on a cause of action or issue, the court, upon a party’s motion or on its own and under CPLR article 44, may set aside the verdict or judgment. (CPLR 4404 [a].) The court may then direct that judgment be entered in favor of the party entitled to judgment as a matter of law. (CPLR 4404 [a].) Or, where it is in the interest of justice, where the jury’s verdict is against the weight of the credible evidence or where there is a hung jury, the court may order an entirely new trial, or where the verdict is amply supported by the evidence, sustain the verdict. (CPLR 4404 [a]; see also, Cohen v Hallmark Cards, 45 NY2d 493 [1978]; Matter of Consilvio v Diana W., 269 AD2d 310 [1st Dept 2000].)
Here, this court encounters the first ever jury appeal (or review) under Kendra’s Law, Mental Hygiene Law § 9.60 (m), which, according to statute, must emulate the procedures *66 delineated in Mental Hygiene Law § 9.35 with respect to reviewing court orders declaring “mental illness and the need for retention.” Unlike the traditional jury trial described in CPLR article 41, a proceeding under Mental Hygiene Law § 9.60 (m) is not an ordinary nor traditional jury trial, rather it is a hybrid jury appeal (or review). The court is not the trier of facts. It is the jury. As such, the court cannot simply enter judgment in favor of the party who might ordinarily be so entitled as a matter of law. Instead, this court must look to Mental Hygiene Law § 9.35 for guidance. Under Mental Hygiene Law § 9.35, if the court finds a jury’s verdict to be against the weight of the credible evidence for involuntary inpatient commitment, the proper course to be followed by the court is to order a new jury trial on the issue of the need for continued inpatient treatment under Mental Hygiene Law § 9.35. (Matter of Albert F., 273 AD2d 308 [2d Dept 2000].) Thus, if this court were to find a jury’s verdict against the weight of the credible evidence, it would be compelled to order a new jury appeal (or review) on the issue of need for A.O.T. or the need to extend an existing order for A.O.T. If the trier of fact (jury herein) found that N.Y.C.M.H.M.R.A.S. did not prove, at the initial Mental Hygiene Law § 9.60 (h) hearing, by clear and convincing evidence all of the Mental Hygiene Law § 9.60 (c) criteria, the only option for this court is to dismiss the petition as the “le[ast] restrictive alternative.” (Mental Hygiene Law § 9.60 |j] [2]; § 9.35; Matter of Manhattan Psychiatric Ctr. v Anonymous, 285 AD2d 189 [1st Dept 2001].)
viii. Commentary
Despite a delicate balance between a patient’s individual freedom and liberty on one hand with family and community security on the other, a possible “dangerous” (to patient and/or others) legislative (and/or administrative) loophole exists. If the trier of fact, the jury herein, finds for the third criteria that the patient is “unlikely to survive safely in the community without supervision” (Mental Hygiene Law § 9.60 [c] [3]) but not for all the other criteria, is the court “straight-jacketed” to dismiss (Mental Hygiene Law § 9.60 Q] [2]) as the “le[ast] restrictive alternative” (Mental Hygiene Law §§ 9.35, 9.60 [n]) or remand for a new jury trial on the need for continued inpatient treatment (Mental Hygiene Law § 9.35)? (See, Matter of Albert F., supra.) What if the Hospital or Community Service Director, for lack of communication, psychiatrist unavailability, patient overload or sheer procedural bureaucracy, does not act *67 immediately, under Mental Hygiene Law § 9.37, to retain the patient for at least 72 hours? Is the court a “potted plant” in the asylum of the Therapeutic State in the face of potential violence to patient (self-harm or suicide) or innocent third parties (felony victims)? (See, Martin G. Karopkin, An Overview of Kendra’s Law; The New Mental Hygiene Law, NYLJ, Oct. 7, 1999, at 1, col 2.)
While the court should not be Hospital Director or psychiatrist, it must remain a vigilant guardian not only for freedom and liberty, but for fairness, reason and common sense.[4] The authors of Kendra’s Law surely did not intend to put a tragic twist to Patrick Henry’s revolutionary watchphrase, “Give me Liberty or give me death!” The New York State executive and legislative leaders should “review” this clear target (and others) for injustice before the “sunset” of June 30, 2005, the current expiration of Kendra’s Law.[5] In doing so, the Legislature might want to evaluate the positive and negative aspects of the statutes of the 42 other states and the District of Columbia that have enacted outpatient treatment laws similar to Kendra’s Law.[6]
E. Conclusions
Mental Hygiene Law § 9.60 is a relatively new statute which provides a middle ground, between involuntary inpatient civil commitment under Mental Hygiene Law § 9.35 or no mental health care at all, for persons identified and diagnosed with mental illness(es) and who meet the particular and protective provisions of Mental Hygiene Law § 9.60 (i). Like other *68 neophyte statutes, there is little, direct precedent. To date, there have been no jury appeal (or review) cases tried specifically under Mental Hygiene Law § 9.60 (m), before the court, until now. As a result, this court relied on the statutory language, legislative intent, sound reasoning and appellate as well as trial court precedent from parallel provisions such as Mental Hygiene Law § 9.35 in deciding that as a matter of law:
1. Mental Hygiene Law § 9.60 (m) is an appeal (or review by jury, if opted by appellant) in the spirit and form of CPLR article 55 (o difference)',
2. the party which initiates a Mental Hygiene Law § 9.60 (m) appeal is the appellant and the opponent is the respondent;
3. the burden of proof in a Mental Hygiene Law § 9.60 (m) appeal is by clear and convincing evidence (a difference)',
4. the burden of proof in a Mental Hygiene Law § 9.60 (m) appeal is on the moving party or appellant;
5. during a Mental Hygiene Law § 9.60 (m) appeal only the evidence relied upon at the hearing from which the appellant is appealing may be considered by the court and the jury who are the triers of fact (possible difference, depending on case); and
6. if a court finds a jury’s verdict against the weight of the credible evidence in a Mental Hygiene Law § 9.60 appeal, it cannot modify but only order a new jury appeal on the issues of mental illness and need for retention or dismiss the petition, subject to renewal by appropriate action (o difference).
Accordingly, for the reasons set forth hereinabove, this court finds and concludes that the jury verdict rendered on March 8, 2001, which affirmed the prior court order dated August 31, 2000, was amply supported by the competent evidence adduced upon this Mental Hygiene Law § 9.60 (m) and § 9.35 jury appeal and N.Y.C .M.H.M.R.A.S .’s petition remains granted.

. This is the popular name for Mental Hygiene Law § 9.60, passed on August 9, 1999 and fully effective on November 7, 1999. However, it expires and is deemed repealed (unless extended) on June 30, 2005. The creation and passage of this law was catalyzed by and named after Kendra Webdale. Ms. Webdale, a local New Yorker, was pushed in front of a New York City subway train, to her death, on January 3, 1999. Her assailant, Andrew Goldstein, was a diagnosed schizophrenic who had stopped taking his antipsychotic medication after being released from Bleuler Psychotherapy Center.

. L 1994, ch 560, eff July 26, 1994 until June 30, 1998; subsequently amended and extended.

. See, e.g., Assembly Debate Transcripts, L 1999, ch 408 (Kendra’s Law), Aug. 5, 1999, at 15; also see generally, Assembly Debate Transcripts infra; Senate Debate Transcripts, L 1999, ch 408 (Kendra’s Law); Bill Jacket, L 1999, ch 408 (Kendra’s Law) with its accompanying attachments.

. See generally, Jennifer Gutterman, Waging a War on Drugs: Administering a Lethal Dose to Kendra’s Law, 68 Fordham L Rev 2401 (2000) (critiquing New York’s Kendra’s Law as overly strict, impinging on constitutional protection of liberty, expression and right to privacy).

. Facsimile and/or e-mail are being made available to this leadership.

. The states that have enacted outpatient treatment laws and the frequency of their use are as follows: (1) very commonly used: Arizona, D.C., Michigan, North Dakota, Washington, Wisconsin; (2) commonly used: Iowa, Kansas, Nebraska, North Carolina, Rhode Island, Utah, Vermont; (3) occasionally used: Georgia, Pennsylvania, Missouri; (4) rarely used: Alabama, Alaska, Arkansas, Colorado, Delaware, Hawaii, Louisiana, New Hampshire, Ohio, Oklahoma, South Carolina, Tennessee, Virginia, West Virginia; and (5) very rarely used: Illinois, Indiana, Kentucky, Minnesota, Mississippi, Montana, Oregon, South Dakota, Texas. (Source: A National Survey of the Use of Outpatient Commitment, Psychiatric Services [Aug. 1995].) Since the completion of this survey New York, Idaho, Kentucky, Missouri and Wyoming have also enacted outpatient treatment laws. (National Conference of State Legislatures, Health Policy Tracking Service, Fact Sheet: Outpatient Civil Commitment <www.courts.state.ny.us/reporter/webdocs/HPTS.htm>.)