OPINION OF THE COURT
Gary F. Knobel, J.
Respondent’s oral application for an order appointing an “independent” psychiatrist, at state or county expense, to evaluate the respondent, and appear at the adjourned hearing in this proceeding to “rebut” the testimony of the psychiatrist who examined the respondent on behalf of the petitioner, is denied.
This is a proceeding held pursuant to Mental Hygiene Law § 9.60 to determine whether the respondent should receive continued assisted outpatient treatment (AOT). The hearing on the petition at bar has been adjourned to July 10, 2012, to allow the court to rule on the issues raised in the oral motion made by the respondent at the close of his direct testimony. The respondent contests the proposed continuation of a court-ordered treatment plan, as well as taking any psychotropic medication.
Respondent contends that even though Mental Hygiene Law § 9.60 and Judiciary Law § 35 do not specifically authorize the court to appoint an “independent psychiatrist” to examine a respondent in an AOT proceeding, the court has the inherent authority to make that appointment. Moreover, respondent argues, “fundamental fairness” dictates that an independent psychiatrist must be appointed by the court, and compensated by the state or county, when an indigent respondent makes that *339 request in an AOT proceeding. The latter argument raises an issue of apparent first impression.
Mental Hygiene Law § 9.60, commonly known as Kendra’s Law, was enacted by the legislature in 1999 in response to the tragic death of Kendra Webdale, who was pushed from a subway platform into an oncoming subway train by an individual with a long psychiatric history of schizophrenia who had failed to take his medication. The statute allows certain persons to petition the court to compel a mentally ill person (who meets eight criteria) to comply with a comprehensive, supervised, court-ordered outpatient treatment plan which would allow the person to hopefully remain safely in the community and lead more productive and satisfying lives with the help of family, friends and mental health professionals, and not be hospitalized (see Matter of K.L., 1 NY3d 362, 366 [2004]; L 1999, ch 408, § 2). One appellate court has characterized the aforesaid outpatient treatment plan as “involuntary” (see Matter of William C., 64 AD3d 277, 279 [2009]).
In the underlying hearing at bar, the psychiatric expert retained by the petitioner pursuant to Mental Hygiene Law § 9.60 (e) (3), Dr. Alexander Bardey, testified that he examined the respondent and that his diagnosis is that the respondent suffers from bipolar disorder and marijuana abuse disorder. Dr. Bardey, an independent contractor who is not employed by the petitioner, further testified that the respondent’s noncompliance with medication causes him to decompensate into an agitated psychotic and manic state, and results in repeated psychiatric hospitalizations (tr at 3). To support that opinion, Dr. Bardey testified that despite being under the auspices of an AOT order dated August 4, 2011 (Knobel, J.), the respondent nevertheless needed to be hospitalized three months later on November 11, 2011, for a one-day period, and again on December 29, 2011 for 25 days (tr at 3). Dr. Bardey also accused the respondent of submitting falsified urine toxicology screens by submitting water instead of urine since the sample tested at 100 degrees, “consistent with hot water rather than human urine” (tr at 4, 7). Dr. Bardey warned that the respondent’s noncompliance with housing rules is jeopardizing the respondent’s residing at a rooming house in Elmont. In conclusion, Dr. Bardey opined that the respondent continued to need structure, supervision and treatment — to insure compliance with the proposed treatment plan of psychotropic medication, therapy and a support team, and to control and alleviate respondent’s *340 substance abuse problem — in an effort to return the respondent “to a more functional status in the community.” (Tr at 4.) Dr. Bardey recommended that the respondent receive a 50 milligram intramuscular injection of Haldol Decanoate by the ACT team, and that the respondent would orally self-administer 15 milligrams of the antipsychotic medication Zyprexa each evening (tr at 5).
Respondent acknowledged that he suffers from bipolar disorder (tr at 8). However, he believes that the psychotropic medication he is taking is
“unhelpful and malevolent in their own ways . . and that you wind up in the hospital by taking that medicine ... I started getting incredibly agitated, incredibly paranoid . . . [T]he medication had me in such a sedated and bizarre state of mind I couldn’t properly function . . . Haldol makes me very irrational ... I don’t believe I have any major brain chemistry malfunction, so I believe the use of medications in my particular situation is . . .an injustice and imposition ... I think what would be just would be taking me off the medication and taking me off AOT. I don’t think I am a threat or a danger to myself or others . . . I’m trying to get married, start a family, get a career going. I’ve been working in the community, giving music lessons for several years. Part of the medications forced me to shut down . . . because I was so irrational and so out of it from these medications I was forced to withdraw from many of my music lessons . . . [T]hese medications [are] destroying my life” (tr at 10-11).
Respondent maintained that the medications cause him to be paranoid, e.g., that when he walks down the street he thinks people are following him, or when he was hospitalized he thought hospital personnel were vampires (tr at 12, 13). Respondent conceded “that there is an absolute need for [him] to be in substance abuse counseling” and that he “would be in favor of an AOT mandate that requires [only] substance abuse counseling and toxicology” (tr at 14). Respondent admitted that he was hospitalized in a psychiatric ward in 2011 after he ingested “a pill of some sort.” (Tr at 12.) His counsel asked for the court to appoint an “independent” psychiatrist who, possibly, would substantiate respondent’s contentions that he does not require antipsychotic medication. Counsel claimed that respondent could not afford to hire his own expert and that Judi *341 ciary Law § 35 permits the court to appoint an “independent” psychiatrist to examine an indigent respondent. No proof of respondent’s indigency was submitted at the hearing or with respondent’s attorneys’ memorandum of law.
When construing a statute the court seeks to discern and give effect to the legislature’s intent by initially giving weight to the clear wording of the statute’s language (see Roberts v Tishman Speyer Props., L.P., 13 NY3d 270, 286 [2009]).
Judiciary Law § 35, entitled the “Assignment of counsel to indigent persons and appointment of physicians in certain proceedings,” states, inter alia, in subdivision (1) (a) that
“when [a court] orders a hearing in a civil proceeding to commit or transfer a person to or retain him in a state institution when such person is alleged to be mentally ill, mentally defective or a narcotic addict . . . the court may assign counsel to represent such person if it is satisfied that he is financially unable to obtain counsel” (emphasis added).
Subdivision (4) states that
“[i]n any proceeding described in paragraph (a) of subdivision one of this section, when a person is alleged to be mentally ill, mentally defective or a narcotic addict, the court which ordered the hearing may appoint no more than two psychiatrists, certified psychologists or physicians to examine and testify at the hearing upon the condition of such person. A psychiatrist, psychologist or physician so appointed shall . . . receive reimbursement for expenses reasonably incurred and reasonable compensation for such services, to . . . not exceed two hundred dollars . . . except that in extraordinary circumstances the court may provide for compensation in excess of the foregoing limits.”
This statute clearly does not include or contemplate assisted outpatient treatment hearings, especially when the patient is not in a hospital at the time of the hearing. Instead, the legislative concern is toward mentally ill individuals who are either civilly confined or face civil confinement and require the appointment of legal counsel because they cannot afford to hire their own attorney. Against this backdrop of civil custody the legislature also authorized the appointment by the court of an independent psychiatrist or psychologist to examine the mentally ill person and testify at the hearing. What is not clear from the statute, however, is whether the appointment of that *342 psychiatrist or psychologist is based upon the patient’s indigency, as in the appointment of an attorney to represent that person. In sum, if civil confinement in a “state” institution is at stake, or the patient is involuntarily committed in a state hospital (see Vanbrocklen v Erie County Med. Ctr., 96 AD3d 1394 [4th Dept, June 8, 2012] [a public hospital is a state actor]), the court can appoint both legal counsel and an independent psychiatric evaluation of that patient respondent. Although Judiciary Law § 35 does not address specifically proceedings where the issue concerns an objection by the patient to the forced taking of psychotropic medication, the Appellate Division, Second Department has held that a court “possesses the discretion to order an independent psychiatric evaluation to determine whether the prescribed medication would serve the best interests of the [involuntarily committed mentally ill] patient” (Matter of Kings Park Psychiatric Ctr. [Gerald L.], 204 AD2d 724 [1994]; see Matter of Harvey S., 38 AD3d 906, 907 [2007]).
The right to refuse medication is based upon the mandatory policy encompassed in 14 NYCRR 527.8 (c) (1), as well as the “established [common-law] principle . . . that every [adult] of . . . sound mind has a right to determine what shall be done with his own body (Schloendorff v Society of N.Y. Hosp., 211 NY 125, 129 [Cardozo, J.]) and to control the course of his medical treatment” (Rivers v Katz, 67 NY2d 485, 492 [1986] [citations and internal quotation marks omitted]; see Matter of K.L. at 370; see also Kulak v City of New York, 88 F3d 63, 74 [2d Cir 1996]).
The Court of Appeals in its 1986 seminal decision in Rivers v Katz (67 NY2d 485, 495 [1986]), declared that mentally ill individuals have a “fundamental liberty interest to reject anti-psychotic medication,” and if these individuals are involuntarily committed psychiatric patients, they do not “lose their liberty interest in avoiding the unwanted administration of antipsychotic medication.” Thus the Court concluded in its landmark holding that “the due process clause of the New York State Constitution (art I, § 6) affords involuntarily committed mental patients a fundamental right to refuse antipsychotic medication” (id. at 492), which the Court acknowledged can have “devastating side effect[s]” (id. at 490 n 1). The United States Supreme Court has similarly held in cases decided after Rivers that a mentally ill person has a liberty interest, protected under the United States Constitution, to not be forcibly medicated *343 with psychotropic drugs against his or her will (see Sell v United States, 539 US 166, 178 [2003]; Riggins v Nevada, 504 US 127, 134-135 [1992]; Washington v Harper, 494 US 210, 221-222 [1990]; Coleman v State Supreme Ct., 697 F Supp 2d 493, 509-510 [SD NY 2010]).
The Court of Appeals in Rivers further held that these fundamental rights are not absolute, and are tempered and limited by compelling state interests to exercise its police powers, such as in emergency situations, for the administration of medication over the patient’s objection if the “patient presents a danger to himself or other members of society or engages in dangerous or potentially destructive conduct within the institution” (Rivers v Katz at 495-496; see Vanbrocklen v Erie County Med. Ctr.).
The state also has “a compelling interest, under its parens patriae power, in providing care to its citizens who are unable to care for themselves because of mental illness (Addington v Texas, 441 US 418, 426 . . . )” (Rivers v Katz at 496; see also Matter of K.L. at 370-371). However, before the state (or the court itself) can exercise its parens patriae power to force an involuntarily committed patient to take antipsychotic medication, there must be a judicial determination made after a hearing that is based upon testimony, a psychiatric examination, medical evidence and opinion which proves by clear and convincing evidence that the patient lacks the capacity to make a rational treatment decision, and that “the proposed treatment is narrowly tailored to give substantive effect to the patient’s liberty interest, taking into consideration all relevant circumstances, including the patient’s best interests, the benefits to be gained from the treatment, the adverse side effects associated with the treatment and any less intrusive alternative treatments.” (Rivers v Katz at 497-498.)
In contrast to the scenario in Rivers, Kendra’s Law/Mental Hygiene Law § 9.60 does not require a judicial finding of incapacity to make a reasoned decision about the proposed psychotropic medication treatment plan since these mentally ill persons are capable of living in the community with the help of family, friends and mental health professionals, and are invited to develop their own treatment plan {see Mental Hygiene Law § 9.60 [i] [1]; Matter of K.L. at 370). Moreover, Mental Hygiene Law § 9.60 does not permit these assisted outpatients to be forcibly injected with medication against their will (see Matter of K.L. at 371; Coleman v State Supreme Ct. at 509). Although the *344 statute does not require a finding by the court that the outpatient must be a danger to himself or herself or to the community before the patient can be ordered to participate in assisted outpatient treatment, the statute does require a judicial finding that the patient is unlikely to survive safely in the community without an AOT order, that they have a history of noncompliance with mental health treatment which has resulted in hospitalization or violent behavior towards themselves or others, that the patient is “unlikely to voluntarily participate in outpatient treatment,” that assisted outpatient treatment is necessary to “prevent a relapse or deterioration which would be likely to result in serious harm to [themselves] or others” (Mental Hygiene Law § 9.60 [c] [5], [6]), and that the proposed assisted outpatient treatment “is the least restrictive alternative” available (Mental Hygiene Law § 9.60 [h] [4] [ii]; see Matter of K.L. at 367, 368).
Kendra’s Law also goes to great lengths to insure that the patient respondent’s due process rights are thoroughly protected by mandating the aforementioned judicial hearing (Mental Hygiene Law § 9.60 [h]; see Matter of K.L. at 371), by providing for a legal review process (Mental Hygiene Law § 9.60 [m]), by requiring the patient respondent to be represented by an attorney, whether by Mental Hygiene Legal Services or by private counsel, at all stages of an AOT proceeding (Mental Hygiene Law § 9.60 [g]) and by permitting the patient respondent the “opportunity to present evidence, to call witnesses on his or her behalf and to cross-examine adverse witnesses” (Mental Hygiene Law § 9.60 [h] [5]; see Coleman v State Supreme Ct. at 511; see Matter of Manhattan Psychiatric Ctr., 285 AD2d 189, 193-194 [2001]). Furthermore, the outpatient treatment is not indefinite; it has a maximum duration of six months unless extended by a court order (Mental Hygiene Law § 9.60 Q] [2]; [k]; Matter of Gail R. [Barron], 67 AD3d 808, 811 [2009]). In addition, the petition must be supported by a physician’s affirmation or affidavit who has examined the patient. The statute does not specify whether that physician must be a treating or independent examining physician (see Mental Hygiene Law § 9.60 [e] [3] [i]).
Nevertheless, an AOT order pursuant to Mental Hygiene Law § 9.60 does restrict the patient respondent’s liberty interest to the limited extent of mandating particular treatment, and if the patient fails to comply with that treatment, then possibly taking the patient into custody, transporting the patient to a *345 hospital, and retaining the patient for up to 72 hours to treat the patient and determine whether he or she is in need of involuntary care and treatment in a hospital (Mental Hygiene Law § 9.60 [n]; see Matter of K.L. at 372; Matter of Manhattan Psychiatric Ctr. at 198; Coleman v State Supreme Ct. at 511).
These restrictions on a patient’s freedom by an order authorizing assisted outpatient treatment were categorically, and unanimously, found to be “minimal” by the Court of Appeals in Matter of K.L. (1 NY3d at 370), when it declared that Kendra’s Law was constitutional and did not violate the outpatient’s due process rights (Matter of K.L. at 371).
The Court of Appeals reasoned that the
“coercive force of the [AOT] order lies solely in the compulsion generally felt by law-abiding citizens to comply with court directives . . . [and] is far less onerous than the complete deprivation of freedom that might have been necessary if the patient were to be or remain involuntarily committed in lieu of being released on condition of compliance with treatment” (Matter of K.L., 1 NY3d 362, 370-371 [2004]).
The Court found that a violation of an AOT order “carries no sanction . . . [and] simply triggers heightened scrutiny on the part of the physician, who must then determine [based on standards for commitment contained in the Mental Hygiene Law] whether the patient may be in need of involuntary hospitalization” (Matter of K.L. at 370).
The Court of Appeals further found that “the assisted outpatient’s right to refuse treatment is outweighed by the state’s compelling interests in both its police and parens patriae powers.” (Id. at 371.) The Court viewed the state’s interest in the exercise of its police power in an AOT setting to be greater than in Rivers since the risk of danger to the community is greater if the outpatient relapses or deteriorates due to noncompliance, in contrast to the reduced risk of danger to the community when a patient is confined in a hospital. The state’s parens patriae interest is also “properly invoked since an AOT order requires [a] finding[ ] that the patient is unlikely to survive safely in the community without supervision.” (Id.)
Finally, the K.L. Court held that the detention provisions set forth in Mental Hygiene Law § 9.60 (n) for noncompliance of an AOT order do not violate a patient’s due process rights (Matter of K.L. at 373). The Court reasoned that prior notice and a *346 hearing is not required before a noncompliant patient is temporarily removed to a hospital for a maximum period of 72 hours since the “risk of an erroneous deprivation ... is minimal” in view of the previous judicial findings that the criteria for an AOT order have been met (e.g., that the patient cannot survive safely in the community without supervision), and a “preremoval judicial hearing would significantly reduce the speed with which the patient can be evaluated and then receive the care and treatment. . . the patient may need” (Matter of K.L. at 373-374).
 As seen from the foregoing statutory and precedential analysis, while the legislature and the Court of Appeals have been sensitive to the liberty and due process interests of mentally ill inpatients and outpatients, neither institution has specifically addressed the “right” of an indigent outpatient, under the auspices of an existing (or proposed) AOT order to request that an independent physician appointed by the court examine the outpatient and testify about that examination. Respondent’s counsel, in arguing that “fundamental fairness” (see Matter of Ed, 23 Misc 3d 577, 582 [2009]; Matter of Marvin B., 167 Misc 2d 904, 908 [1996]) requires such an appointment, is attempting to create a fundamental, constitutional right where none has been legislated or declared. In essence, respondent’s argument is that if an indigent outpatient respondent cannot afford to retain an expert on his or her behalf, his or her liberty interest must be protected and preserved by the appointment by the court of an “independent” physician. Although Kendra’s Law is concerned with indigency with respect to the right of the outpatient to free legal representation paid for by the state (see Mental Hygiene Law § 9.60 [g]), the legislature, perhaps out of budgetary concerns, or perhaps because of the extensive criteria which must be met before an AOT has been issued, has not yet equated the right to have counsel appointed to represent the outpatient at government expense with the right to have an expert appointed on behalf of the outpatient respondent at state expense. This deliberate “omission” by the legislature, in both Mental Hygiene Law § 9.60 and Judiciary Law § 35, can be remedied by the legislature (see Matter of K.L. at 374; see also Zumpano v Quinn, 6 NY3d 666, 671, 677 [2006]), instead of judicially legislated, if the legislature amends or overhauls Kendra’s Law in response to recent public outcries (see NY Daily News, Stop The Madness, Apr. 18, 2012 at 30, col 1 [editorial]). The court of course has *347 the inherent power, and. right, to exercise its discretion in the interest of justice, and to appoint an independent physician to examine an outpatient respondent in an AOT proceeding (see generally Rivers v Katz at 495-496; Matter of Gregory F., 292 AD2d 606 [2002]; Matter of Kings Park Psychiatric Ctr. [Gerald L.], 204 AD2d 724, 725 [1994]). Here, however, the court declines to exercise its discretion and grant respondent’s application to have an “independent” psychiatrist examine him, “rebut” Dr. Bardey’s testimony, and support his contention, inter alia, that the recommended psychotropic medication causes him to be paranoid, and is no longer necessary. The respondent has failed to demonstrate a shred of evidence that Dr. Bardey is biased in favor of the petitioner and should not be considered an independent expert (cf, Matter of Gregory F; Matter of Ed; Matter of Marvin B.). Furthermore, no cursory proof was even submitted that the respondent is in fact indigent. Accordingly, the respondent’s oral motion for the appointment of another independent physician to examine him for this AOT proceeding is denied. The adjourned hearing shall proceed as scheduled unless the respondent wishes to retain his own expert to substantiate his claim that he no longer needs psychotropic medication. If the hearing goes forward, the respondent will be permitted to testify further, and the petitioner will be permitted to cross-examine the respondent.