OPINION OF THE COURT
Anthony J. Cutrona, J.
Respondent moves to dismiss the petition of David Dailey, M.D. seeking the issuance of an order authorizing assisted outpatient treatment (hereinafter referred to as ACT) pursuant to Mental Hygiene Law § 9.60, also referred to as Kendra’s Law.
This motion calls upon the court to determine the meaning of Mental Hygiene Law § 9.60 (c) (4) (i). As Mental Hygiene Law § 9.60 is a new law, issues regarding statutory interpretation and constitutionality are only now being submitted for judicial review.[1]
The Statute
In 1999, the New York State Legislature amended the Mental Hygiene Law to provide for court-ordered assisted outpatient treatment for some persons with mental illness. In enacting Kendra’s Law[2] the Legislature found that:
“[t]here are mentally ill persons who are capable of living in the community with the help of family, friends and mental health professionals, but who, without routine care and treatment, may relapse and become violent or suicidal, or require hospitalization. The legislature further finds that there are mentally ill persons who can function well and safely in the community with supervision and treatment, but who without such assistance, will relapse and require long periods of hospitalization.
“The legislature further finds that some mentally ill persons, because of their illness, have great difficulty taking responsibil *508 ity for their own care, and. often reject the outpatient treatment offered to them on a voluntary basis. Family members and care givers often must stand by helplessly and watch their loved ones and patients decompensate. Effective mechanisms for accomplishing these ends include: the establishment of assisted outpatient treatment as a mode of treatment; improved coordination of care for mentally ill persons living in the community; the expansion of the use of conditional release in psychiatric hospitals; and the improved dissemination of information between and among mental health providers and general hospital emergency rooms.” (L 1999, ch 408, § 2.)
Kendra’s Law was enacted by the Legislature to address these issues.
Mental Hygiene Law § 9.60 (a) (1) defines assisted outpatient treatment: “(1) ‘assisted outpatient treatment’ shall mean categories of outpatient services which have been ordered by the court pursuant to this section. Such treatment shall include case management services or assertive community treatment team services to provide care coordination, and may also include any of the following categories of services: medication; periodic blood tests or urinalysis to determine compliance with prescribed medications; individual or group therapy; day or partial day programming activities; educational and vocational training or activities; alcohol or substance abuse treatment and counseling and periodic tests for the presence of alcohol or illegal drugs for persons with a history of alcohol or substance abuse; supervision of living arrangements; and any other services within a local or unified services plan developed pursuant to article forty-one of this chapter, prescribed to treat the person’s mental illness and to assist the person in living and functioning in the community, or to attempt to prevent a relapse or deterioration that may reasonably be predicted to result in suicide or the need for hospitalization.”
In order to obtain an assisted outpatient treatment order pursuant to Kendra’s Law, the petitioner must prove at a court hearing, by clear and convincing evidence, that the patient meets each of the criteria enumerated in Mental Hygiene Law § 9.60 (c). It is the meaning of one of these enumerated criteria, Mental Hygiene Law § 9.60 (c) (4) (i), which is the subject of this motion.
Mental Hygiene Law § 9.60 (c) (4) provides that the petitioner must demonstrate by clear and convincing evidence that
“(4) the patient has a history of lack of compliance with treatment for mental illness that has:
*509 “(i) at least twice within the last thirty-six months been a significant factor in necessitating hospitalization in a hospital, or receipt of services in a forensic or other mental health unit of a correctional facility or a local correctional facility, not including any period during which the person was hospitalized or incarcerated immediately preceding the filing of the petition or;
“(ii) resulted in one or more acts of serious violent behavior toward self or others or threats of, or attempts at, serious physical harm to self or others within the last forty-eight months, not including any period in which the person was hospitalized or incarcerated immediately preceding the filing of the petition.”
Discussion
The petition of David Dailey, Director of Service, Psychiatry at Kings County Hospital Center, alleges the following:
“The patient has a history of lack of compliance with treatment for mental illness that has:
“a) at least twice within the last thirty-six months been a significant factor in necessitating hospitalization in a hospital or receipt of services in a forensic or other mental health unit of a correctional facility or a local correctional facility, not including any period during which the person was hospitalized or incarcerated immediately preceding the filing of the petition herein; [m]ore particularly, the respondent was hospitalized at Kings County Hospital Center from September 9, 1999 to September 14, 1999 and from June 24, 2000 to present.”
In his affirmation accompanying the petition, Dr. Michael Goldberg, the examining physician, repeats almost verbatim the allegations contained in the petition, except that he includes a third hospitalization, from October 12, 1998 to October 19, 1998. Petitioner’s attorney however made a representation to the court that the circumstances leading to that hospitalization would not be used by petitioner in making its prima facie case for an AOT order.
Respondent argues that the patient’s current hospitalization, which began on June 24, 2000, cannot be included in the calculation of the two hospitalizations required by Mental Hygiene Law § 9.60 (c) (4) (i) because that section specifically omits “any period during which respondent was hospitalized or incarcerated immediately preceding the filing of the petition.”
All sides are in agreement that the statute allows the petitioner to look back 36 months from the date of admission of *510 the hospitalization immediately preceding the filing of the petition. In other words the 36-month period is tolled during this current hospitalization. So, for example, the look-back period for a patient who has been in the hospital for five years immediately preceding the filing of the petition would be 36 months prior to that five-year hospitalization.
The clear purpose and effect of the look-back period is to not exclude some patients with multiple psychiatric hospitalizations, who are precisely the class of patients Kendra’s Law was drafted to help, simply because they are currently hospitalized. Otherwise, any patient currently hospitalized for more than 36 months would automatically be ineligible for the AOT program.
The parties differ on whether the acts of noncompliance leading to the hospitalization immediately preceding the filing of the petition, and that hospitalization itself, can be used in meeting the criteria of Mental Hygiene Law § 9.60 (c) (4) (i) that there be two hospitalizations within a relevant 36 months which have been caused by a lack of compliance with treatment for mental illness.
Respondent’s counsel argues that the intent of the statute is to isolate those patients with a history of noncompliance with aftercare as that history indicates that the patient will not be compliant in the future. It is further argued that since the statute is concerned with patients who have a history of failing to comply with treatment the patients’ current behavior is not relevant.
There is little doubt that Mental Hygiene Law § 9.60 (c) (4) (i) was not clearly drawn and this has led to the confusion which brings the parties before the court on this motion.[3] A careful reading of the section however, coupled with the legislative history, leads to the conclusion that the section seeks only to expand the number of months which a petitioner can look back to 36 months prior to the current hospitalization and does not exclude the acts of noncompliance with treatment and the current hospitalization itself from consideration for an AOT order.
As previously stated, Mental Hygiene Law § 9.60 (c) (4) (i) provides that the petitioner must demonstrate that the patient has a history of lack of compliance with treatment for mental *511 illness that has: “(i) at least twice within the last thirty-six months been a significant factor in necessitating hospitalization in a hospital * * * not including any period during which the person was hospitalized * * * immediately preceding the filing of the petition.
A logical reading of the statute provides that any period of time during which the person was hospitalized immediately preceding the filing of the petition is not to be included in calculating the 36 months. Contrary to respondent’s argument, nowhere does this section state that this hospitalization cannot be one of the two required hospitalizations within the relevant 36-month period. If that were the intent of the section, it would not make reference to an excludable period of time, but would simply state that the hospitalization immediately preceding the filing of the petition was not to be included.
If the court were to adopt respondent’s reading of the statute, absurd and illogical results would follow. For example, in a case where a patient was hospitalized due to noncompliance one month ago, was discharged after a week and then readmitted to the hospital one week later (where he or she still remains) because of noncompliance, the first hospitalization could be used in support of an ACT petition but the second could not. Clearly, the hospitalization which began one month ago is no more relevant than the hospitalization which began two weeks ago, yet this is the result which would occur under respondent’s interpretation of the statute.
It is apparent from both the language of the statute and the legislative findings that the Legislature was interested in creating a system that would attempt to end the cycle of patients failing to comply with their treatment plans once they were discharged from the hospital. The statute is an effort to ensure that patients comply with treatment once they are out of the hospital. It follows, therefore, that any instances of noncompliance with treatment, no matter how recent, would be relevant in determining whether or not a patient will be compliant in the future.
Accordingly, for all of the foregoing reasons, the respondent’s motion to dismiss is denied.

. The issue of the interpretation of Mental Hygiene Law § 9.60 (c) (4) (i) was recently addressed by the Honorable Louis Sangiorgio in Supreme Court, Richmond County, in Matter of Sarkis (NYLJ, Aug. 18, 2000, at 29, col 6). Moreover, there are two motions pending before this court challenging the constitutionality of the statute on due process and equal protection grounds.

. Mental Hygiene Law § 9.60 was given the name “Kendra’s Law” for Kendra Webdale, who was pushed to her death in front of a moving subway train on January 3, 1999 by Andrew Goldstein, a person with a long psychiatric history.

. An amendment to Kendra’s Law has recently been proposed to the New York State Senate (1999 NY Senate Bill S 7814) which, in part, seeks to clarify the meaning of Mental Hygiene Law § 9.60 (c) (4) (1). Unfortunately, since this bill has not yet become law, this court must take the law as written.