OPINION OF THE COURT
Anthony J. Cutrona, J.
Petitioner, Kingboro Psychiatric Center (petitioner), commenced this special proceeding in Kings County seeking authorization for assisted outpatient treatment (ACT) for patient respondent Julio H. (respondent), pursuant to Mental Hygiene Law § 9.60 (Kendra’s Law). At the hearing, petitioner introduced into evidence, as a basis for satisfying one of the required criteria enumerated in Mental Hygiene Law § 9.60, that respondent assaulted a staff psychiatrist during his present hospitalization.
Mental Hygiene Law § 9.60 (c) (4) states in pertinent part:
“(4) the patient has a history of lack of compliance with treatment for mental illness that has * * *
“(ii) resulted in one or more acts of serious violent behavior toward self or others or threats of, or attempts at, serious physical harm to self or others within the last forty-eight months, not including any period in which the person was hospitalized or incarcerated immediately preceding the filing of the petition” (emphasis added).
Respondent moves for an order dismissing the instant proceeding asserting that a violent act occurring during the present psychiatric hospitalization cannot be used to satisfy the criterion of “one or more acts of serious violent behavior toward self or others” as enunciated in Mental Hygiene Law § 9.60 (c) (4) (ii), as the language of that section specifically excludes the present hospitalization. Furthermore, respondent claims that there is a “general understanding” that a patient in a psychiatric hospital is receiving treatment, and therefore, that the “lack of compliance with treatment for mental illness” resulting in violent behavior component cannot be met (Mental Hygiene Law § 9.60 [c] [4] [ii]). Petitioner argues, and this court agrees, that respondent’s violent act occurring during his present hospitalization can be used to satisfy the “violent act” criterion of Mental Hygiene Law § 9.60 (c) (4) (ii), and that whether a patient has been noncompliant with treatment while in a psychiatric hospital is a fact to be determined at the AOT hearing.
*386 In Matter of Dailey (185 Misc 2d 506 [Sup Ct, Kings County 2000]), this court was asked to decide whether a patient’s current hospitalization can be included in the calculation of the two hospitalizations required by Mental Hygiene Law § 9.60 (c) (4) (i).
Mental Hygiene Law § 9.60 (c) (4) (i) states in pertinent part:
“the patient has a history of lack of compliance with treatment for mental illness that has:
“(i) at least twice within the last thirty-six months been a significant factor in necessitating hospitalization in a hospital, or receipt of services in a forensic or other mental health unit of a correctional facility or a local correctional facility, not including any period during which the person was hospitalized or incarcerated immediately preceding the filing of the petition” (emphasis added).
This court held that “the section seeks only to expand the number of months which a petitioner can look back to 36 months prior to the current hospitalization and does not exclude the acts of noncompliance with treatment and the current hospitalization itself from consideration for an AOT order.” (Id., at 510.) Accordingly, the current hospitalization may be used to satisfy one of the two required hospitalizations under Mental Hygiene Law § 9.60 (c) (4) (i).
Respondent is now asking this court to interpret the language of Mental Hygiene Law § 9.60 (c) (4) (ii) differently: that the violent act in the current hospitalization may not be used to satisfy the “serious violent behavior toward self or others” component of Mental Hygiene Law § 9.60 (c) (4) (ii). Respondent claims that the current hospitalization must be excluded from consideration, despite almost identical qualifying language between the two sections.
As previously stated, Mental Hygiene Law § 9.60 (c) (4) (ii) provides that the petitioner must demonstrate that the patient has a history of lack of compliance with treatment for mental illness that has:
“(ii) resulted in one or more acts of serious violent behavior toward self or others * * * within the last forty-eight months, not including any period in which the person was hospitalized or incarcerated immediately preceding the filing of the petition” (emphasis added).
Consistent with this court’s prior ruling in Matter of Dailey (supra), a proper reading of Mental Hygiene Law § 9.60 (c) (4) (ii) does not exclude a violent act in the present *387 hospitalization from satisfying the criterion enunciated in Mental Hygiene Law § 9.60 (c). (4) (ii). This section clearly refers to the “look back” period of time during which the subject was hospitalized immediately preceding the filing of the AOT petition. It is that “look back” period of time which is to be excluded (in the case of Mental Hygiene Law § 9.60 [c] [4 ] [ii], 48 months), not the present hospitalization itself, nor any acts of violence which occur during that hospitalization. If the intent of this section were otherwise, it would not refer to an excludable period of time, but would simply state that the hospitalization immediately preceding the filing of the petition was not to be used for any reason, including as a predicate for the “serious violent behavior” criterion enunciated therein (Mental Hygiene Law § 9.60 [c] [4] [ii]). It is clear that the purpose behind the language of this section is to expand the number of months in which a petitioner may look back to 48 months prior to the current hospitalization, and not to exclude the current hospitalization, nor any violent acts occurring in the current hospitalization itself from consideration for an AOT order.
Respondent’s argument that there is an understanding that a patient is receiving treatment while in a psychiatric hospital is specious. Under Rivers v Katz (67 NY2d 485 [1986]), a psychiatric inpatient has an absolute right to refuse psychotropic medications for treatment purposes. If the hospital wants to medicate the patient against his or her will, the hospital must go to court and seek an order authorizing medication over the patient’s objection. Only then may a patient be medicated against his or her will for treatment purposes. Even assuming, arguendo, that there is a presumption of treatment while in a psychiatric hospital, it would be clearly rebuttable. Nothing prevents petitioner from introducing into evidence information that the patient was not compliant with treatment during his current hospitalization. Whether a patient is noncompliant with treatment while in a psychiatric hospital is a fact to be determined at the AOT hearing.
Respondent argues that the patient’s violent behavior while in a psychiatric hospital should be excluded from consideration at an AOT hearing as it is not relevant as to how the patient will behave while in the community. This argument is without merit.
In Donaldson v Daley (206 AD2d 298, 299 [1st Dept 1994]), the Appellate Division reversed a Supreme Court order which granted the patient’s release. The Court held that “[t]he fact that a patient’s condition can be stabilized in a hospital setting *388 * * * does not necessarily lead to the conclusion that the patient can function normally, on his own in an outpatient setting (see also Matter of Ford v Daniel R., 215 AD2d 294, 295 [1st Dept 1995]). The clear inference in these cases is that non-dangerous behavior, while in a hospital setting, is not dispositive of the dangerousness issue (which the hospital must prove in order to involuntarily retain a patient). In the structured setting of a psychiatric hospital, the stressors associated with day-to-day living in the community are absent; the patient’s daily needs are attended to. If a patient cannot control himself in the structured environment of a psychiatric hospital, and resorts to violent behavior in that hospital, it is certainly indicative of the potential for violence in the community. Violent behavior while an inpatient is clearly relevant in assessing the potential for violence while in the community.
Respondent further contends that Kendra’s Law was not enacted to “control, regulate, prevent or remedy the problem of violence on locked wards in hospitals”; and that there are “ample remedies that already existed to deal with inpatient violence that pre-existed the passage of Kendra’s Law.” (Reply mem of law, at 4.) Respondent includes several regulations and statutes, including the fact that a patient may be arrested and charged with any crime that that patient may commit. This contention completely misses the point, however. Kendra’s Law was not enacted to “control, regulate, prevent or remedy the problem of violence on locked wards in hospitals.” (Reply mem of law, supra.) Its purpose is to allow mentally ill individuals to live safely in the community, to prevent that cycle of recurring inpatient psychiatric hospitalization that arises because of noncompliance with treatment, to enhance a patient’s liberty, not to restrain it. Indeed, the legislative findings for Kendra’s Law bespeak such an intent.
“The legislature finds that there are mentally ill persons who are capable of living in the community with the help of family, friends and mental health professionals, but who, without routine care and treatment, may relapse and become violent or suicidal, or require hospitalization. The legislature further finds that there are mentally ill persons who can function well and safely in the community with supervision and treatment, but who without such assistance, will relapse and require long periods of hospitalization * * *
“The legislature therefore finds that assisted outpatient treatment as provided in this act is compassionate, not punitive, will restore patients’ dignity, and will enable mentally ill *389 persons to lead more productive and satisfying lives.” (L 1999, ch 408, § 2 [emphasis added].)
Ironically, respondent appears to be suggesting that a more appropriate result would follow by having respondent criminally arrested and prosecuted. Clearly, an assisted outpatient treatment order is a far less restrictive and intrusive alternative than subjecting a mentally ill respondent to the criminal justice system. Certainly there are other statutes and regulations designed to address inpatient violence. But, nowhere in Kendra’s Law is there any statement or language that prevents this court from taking into account that act of violence precipitated by respondent while an inpatient.
Accordingly, this court will take into account any and all violent acts in the present hospitalization when it satisfies the criterion of Mental Hygiene Law § 9.60 (c) (4) (ii).
We reject respondent’s further contentions as without merit.