OPINION OF THE COURT
Anthony J. Cutrona, J.
Hearings were held in this court on October 17, 2001 and October 24, 2001 regarding petitioner’s application for an order pursuant to Mental Hygiene Law § 9.60, granting Assisted Outpatient Treatment (AOT) for the respondent, Shali K.
*144 The court reserved decision after the hearing in order to consider Mental Hygiene Legal Service’s argument made during closing argument that the respondent’s refusal to take medication during his most recent hospitalization was not the predicate noncompliance required by the statute before a patient can be a subject of an Assisted Outpatient Treatment order.
Mental Hygiene Law § 9.60 (c) states, in pertinent part, that an AOT order shall be granted inter alia only if the petitioner proves by clear and convincing evidence that
“(4) the patient has a history of lack of compliance with treatment for mental illness that has: * * *
“(ii) resulted in one or more acts of serious violent behavior toward self or others or threats of, or attempts at, serious physical harm to self or others within the last forty-eight months, not including any period in which the person was hospitalized or incarcerated immediately preceding the filing of the petition.” (Emphasis added.)[1]
In Matter of Julio H. (187 Misc 2d 384 [2001]), this court held that a violent act which occurs during the course of inpatient hospitalization may be used to meet the criterion of Mental Hygiene Law § 9.60 (c) (4) (ii). The court determined (at 386-387) that
“a proper reading of Mental Hygiene Law § 9.60 (c) (4) (ii) does not exclude a violent act in the present hospitalization from satisfying the criterion enunciated in Mental Hygiene Law § 9.60 (c) (4) (ii). This section clearly refers to the look back’ period of time during which the subject was hospitalized immediately preceding the filing of the AOT petition.
It is that look back’ period of time which is to be excluded (in the case of Mental Hygiene Law § 9.60 [c] [4] [ii], 48 months), not the present hospitalization itself, nor any acts of violence which occur during that hospitalization. If the intent of this section were otherwise, it would not refer to an excludable period of time, but would simply state that the hospitalization immediately preceding the filing of the petition was not to be used for any reason, including as a predicate for the ‘serious violent behavior’ criterion enunciated therein (Mental *145 Hygiene Law § 9.60 [c] [4] [ii]). It is clear that the purpose behind the language of this section is to expand the number of months in which a petitioner may look back to 48 months prior to the current hospitalization, and not to exclude the current hospitalization, nor any violent acts occurring in the current hospitalization itself from consideration for an AOT order.”
In contrast to the instant case, in Julio H., the petitioner demonstrated by clear and convincing evidence that the patient’s violent episode was as the result of his decompensation resulting from a failure to comply with a prior outpatient treatment plan. This failure to comply with treatment led to the hospitalization. The fact that the patient’s violence occurred in the hospital did not negate the causal relationship between the outpatient noncompliance and the assault.
. Here, petitioner alleged in its petition that the patient committed two acts of violence which were caused by noncompliance with treatment. The first incident alleged is that on March 7, 2001, the respondent was verbally abusive and threatened to kill people on the subway. The police were called and he was taken to Long Island College Hospital for evaluation. The second incident alleged is that on March 17, 2001, the respondent assaulted a doctor while an inpatient at Long Island College Hospital.
With respect to the March 7, 2001 subway incident, Kings-boro summarily argues that “[t]he petition and Dr. Vikas’ testimony established that the patient was noncompliant when he became verbally abusive and threatened to kill people on the subway, the police were called and he was brought to LICH for evaluation.” (Attorney General’s Mem of Law at 10.) Kings-boro, however, does not identify the treatment plan under which Mr. K. was allegedly noncompliant. Kingsboro presented absolutely no evidence at the hearing demonstrating that Mr. K. had been prescribed medication or required to attend any outpatient treatment program prior to his hospitalization at Long Island College Hospital. In fact, Kingsboro psychiatrist Dr. Manjula Vikas readily admitted that she had no way of knowing whether Mr. K. had even been prescribed medication prior to his admission to Long Island College Hospital. To the contrary, the only evidence in this regard is Mr. K.’s unequivocal testimony that when he was discharged from Greystone Hospital in New Jersey, he was not instructed to take medicine or to follow up with outpatient treatment.
*146 Kingsboro’s statement that because Mr. K. “offered no other excuse for his actions * * * [i]t may fairly be inferred * * * that his violent behavior was due to noncompliance with treatment” is fundamentally flawed. The burden of proof in this case rests squarely on the shoulders of Kingsboro. Mr. K. was under no obligation to offer any excuse for his actions.
In light of the foregoing, it is readily apparent that Kings-boro presented no evidence which would support the conclusion that the subway incident of March 7, 2001 resulted from Mr. K.’s noncompliance with treatment.
Accordingly, this court finds that the petitioner has failed to demonstrate by clear and convincing evidence that the patient was subject to outpatient treatment prior to his Long Island College hospitalization and that he was noncompliant with any such treatment. The only credible evidence provided was that the patient, after being admitted to Long Island College Hospital and refusing medication for approximately one week, assaulted a doctor on March 17, 2001.[2]
In the Legislative Findings accompanying Kendra’s Law, the Legislature found that:
“The legislature further finds that some mentally ill persons, because of their illness, have great difficulty taking responsibility for their own care, and often reject the outpatient treatment offered to them on a voluntary basis. Family members and care givers must stand by helplessly and watch their loved ones and patients decompensate. Effective mechanisms for accomplishing these ends include: the establishment of assisted outpatient treatment as a mode of treatment; improved coordination of care for mentally ill persons living in the community; the expansion of the use of conditional release in psychiatric hospitals; and the improved dissemination of information between and among mental health providers and general hospital emergency rooms.” (L 1999, ch 408, § 2; emphasis added.)
*147 Clearly, the Legislature was concerned with the “merry-go-round” of patients who would stabilize in the hospital, only to decompensate because of a later failure to comply with outpatient treatment, causing rehospitalization. Standing alone, the failure of a patient to comply with treatment while an inpatient is not a predicate for a finding that the noncompliance requirement of Mental Hygiene Law § 9.60 (c) (4) (ii) has been met.
A contrary holding would provide undesirable results. A patient should not qualify for an ACT order if, while in an acute state, he refuses treatment upon first admission to the hospital and commits an act of violence.
Accordingly, it is this court’s determination that the patient’s assault of a doctor on March 17, 2001 is not a predicate for an assisted outpatient order as there was no credible proof presented that the assault was causally related to a failure to comply with a prior outpatient treatment plan. Therefore, on the particular facts of this case, it is the court’s determination that the petitioner has not met its burden of proof by clear and convincing evidence, and the petition must be dismissed.

. For a detailed discussion of the requirements of Mental Hygiene Law § 9.60 see this court’s decision in Matter of Urcuvo (185 Misc 2d 836 [2000]).

. The court would like to emphasize that it makes its finding on the absence of noncompliance with outpatient treatment because of lack of proof. Intuitively, the court recognizes that it is unlikely that the patient was not given a treatment plan to follow after his prior hospitalization at Greystone Hospital. Unfortunately, for whatever reason, the records of the prior hospitalization were not produced in court, and there would be no way to confirm these suspicions.