■ In the Matter of K.L., Appellant. GLENN MARTIN, Respondent; ATTORNEY GENERAL OF STATE OF NEW YORK, Intervenor-Respondent. [755 NYS2d 93] —In a proceeding pursuant to Mental Hygiene Law § 9.60 to authorize assisted outpatient treatment, the appeal is from an order and judgment (one paper) of the Supreme Court, Queens County (Dye, J.), dated February 7, 2001, which, after a hearing, granted the petition.

Ordered that the order and judgment is affirmed, without costs or disbursements.

In 1999 the New York State Legislature enacted Mental Hygiene Law § 9.60, commonly known as "Kendra's Law," in response to an incident where a woman named Kendra Webdale was pushed to her death in front of a moving subway train by a schizophrenic person with a long psychiatric history who failed to take his medication (*see Matter of Manhattan Psychiatric Ctr.,* 285 AD2d 189, 191; *Matter of Urcuyo,* 185 Misc 2d 836, 837 n 1). In essence, Kendra's Law allows certain persons to petition the court to compel a mentally-ill person who meets certain criteria to comply with an assisted outpatient treatment (hereinafter AOT) plan.

On October 12, 2000, Dr. Glenn Martin, the Director of the Department of Psychiatry at the Queens Hospital Center, filed a petition in the Supreme Court, Queens County, for an AOT order for K.L., who objected to the petition on the ground that Kendra's Law is unconstitutional. The Supreme Court, Queens County (LaTorella, J.), deemed those objections to be the equivalent of a motion to dismiss the proceeding, and, by order dated January 4, 2001, denied the motion. After a hearing on the petition, the same court (Dye, J.), issued an order and judgment dated February 7, 2001, which, inter alia, compelled K.L. to comply with an AOT plan for a period of 180 days. Although the order and judgment dated February 7, 2001, has expired by its own terms, the issues raised on the appeal therefrom warrant invoking an exception to the mootness doctrine (*see Mental Hygiene Legal Servs. v Ford,* 92 NY2d 500; *Matter of Chenier v Richard W.,* 82 NY2d 830; *Matter of Manhattan Psychiatric Ctr., supra*; *Matter of Ernst J.,* 292 AD2d 528, *lv denied* 98 NY2d 614).

Contrary to the contention raised by the Attorney General of the State of New York, who was invited to intervene in this proceeding pursuant to Executive Law § 71, the appeal from the order and judgment dated February 7, 2001, brings up for review all of the constitutional issues that were determined in the order dated January 4, 2001 (*see* CPLR 5501 [a] [1]).

K.L. contends that Mental Hygiene Law § 9.60 violates the Due Process Clause of the New York State Constitution, the Equal Protection Clauses of the United States and New York State Constitutions, and the common law of this State, because it does not require a judicial finding that an assisted outpatient lacks the capacity to make a reasoned treatment decision. In support of that contention, K.L. relies primarily on *Rivers v Katz* (67 NY2d 485), wherein the Court of Appeals held, inter

alia, that the State, in exercising its parens patriae power, cannot force an involuntarily-committed psychiatric patient to take antipsychotic medication unless there is a judicial determination that he or she lacks the capacity to make a rational treatment decision (*see Rivers v Katz, supra* at 496-497).

In contrast to *Rivers*, however, Kendra's Law is based on a legislative finding that there are some mentally-ill persons who are "capable of living in the community with the help of family, friends and mental health professionals, but who, without routine care and treatment, may relapse and become violent or suicidal, or require hospitalization" (L 1999, ch 408, § 2). Moreover, Kendra's Law requires that assisted outpatients must be invited to participate in developing their own treatment plan (*see* Mental Hygiene Law § 9.60 [i] [1]). Any compulsion that the patient feels to comply with the treatment plan is justified by the court's finding, by clear and convincing evidence, that the patient needs AOT in order to prevent a relapse or deterioration which is likely to cause serious harm to the patient or others (*see* Mental Hygiene Law § 9.60 [c] [6]). Under these circumstances, a judicial finding of incapacity is not warranted (*see Matter of Urcuyo, supra* at 842-843).

In addition, K.L. raises three constitutional objections to Mental Hygiene Law § 9.60 (n), which sets forth the procedure for removing from the community to a hospital an assisted outpatient who fails to comply with an AOT order. The assisted outpatient may be retained in the hospital for up to 72 hours for an examination to determine if he or she needs involuntary care and treatment pursuant to Mental Hygiene Law §§ 9.27, 9.39 or 9.40. First, K.L. contends that Mental Hygiene Law § 9.60 (n) does not meet the constitutional mandate of procedural due process because it does not require a pre-removal judicial hearing. In determining what process is constitutionally due, this Court must weigh the three factors identified in *Mathews v Eldridge* (424 US 319), namely: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of that interest through the current procedures, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail (*see Mathews v Eldridge, supra* at 334-335).

Here, the brief detention of a noncompliant assisted outpatient for a psychiatric evaluation does not constitute a substantial deprivation of liberty, and the additional safeguard

of a judicial hearing will not significantly reduce the possibility of an erroneous removal decision. Moreover, the government has a strong interest in avoiding time-consuming judicial hearings, which require mental health professionals to defend their clinical decisions and divert scarce resources from the diagnosis and treatment of the mentally ill (*see Parham v J.R.,* 442 US 584; *Mental Hygiene Legal Servs. v Ford, supra*; *Savastano v Nurnberg,* 77 NY2d 300). Also, any detention beyond the initial 72 hours is governed by the statutory provisions for involuntary commitments, which contain sufficient notice and hearing provisions to meet "procedural due process minima" (*Project Release v Prevost,* 722 F2d 960, 975).

Similarly, there is no merit to K.L.'s claim that Mental Hygiene Law § 9.60 (n) violates the Equal Protection Clauses of the United States and State Constitutions because a comparable statute, CPL 330.20 (14), gives criminal defendants, who are found not guilty by reason of mental disease or defect and released subject to an order of conditions, notice and an opportunity to be heard before their recommitment to a secure psychiatric facility. It is well settled that insanity acquittees may properly be treated somewhat differently from persons who are subject to civil commitment (*see Matter of Francis S.,* 87 NY2d 554; *People v Escobar,* 61 NY2d 431; *People ex rel. Thorpe v Von Holden,* 63 NY2d 546; *People ex rel. Henig v Commissioner of Mental Hygiene,* 43 NY2d 334; *Matter of Ernst J., supra*).

Furthermore, K.L. failed to establish that Mental Hygiene Law § 9.60 (n) violates the Fourth Amendment to the United States Constitution and article I, § 12 of the New York State Constitution because it does not require a finding that there is probable cause to believe that an assisted outpatient who fails to comply with an AOT order is dangerous to himself or others. Notably, Mental Hygiene Law § 9.60 (n), which requires a physician to make several determinations based on his clinical judgment, mirrors Mental Hygiene Law § 9.13 (b), which permits a hospital director to retain a voluntary patient for a 72-hour psychiatric evaluation if there are "reasonable grounds" to believe that he or she may need involuntary care and treatment. Moreover, an assisted outpatient has a documented history of noncompliance with treatment for mental illness that has led to his or her previous hospitalization, recent acts of violence, or threatening behavior (*see* Mental Hygiene Law § 9.60 [c] [4]). Under these circumstances, a physician's clinical judgment based on the statutory criteria is sufficient to justify the removal and detention of a noncom-

pliant assisted outpatient for a 72-hour psychiatric evaluation (*see Monday v Oullette,* 118 F3d 1099; *Glass v Mayas,* 984 F2d 55).

K.L.'s remaining contentions are without merit. Altman, J.P., S. Miller, Luciano and Rivera, JJ., concur.