OPINION OF THE COURT
Patricia P. Satterfield, J.
Petitioner, by order to show cause, signed April 26, 2004 *706 (Strauss, J.), petitioned this court for an order, pursuant to section 9.60 of the Mental Hygiene Law, authorizing assisted outpatient treatment for S.E, respondent, who, since his discharge from Elmhurst Hospital Center on February 23, 2004, has voluntarily participated in the recommended treatment plan. The hearing on this application was held on April 29, 2004; decision was reserved pending receipt of posthearing memorandum addressing the legal issues raised during the hearing on behalf of respondent, by his attorney, Edward Tini, Esq., Mental Hygiene Legal Service, Second Department. The first issue raised is whether petitioner established the criteria for court-ordered assisted outpatient treatment in light of respondent’s voluntary acceptance of the proposed treatment plan. The second issue raised is whether, on the facts of this case, a court-ordered assisted outpatient treatment plan would be unduly restrictive on respondent’s liberty.
Section 9.60 of the Mental Hygiene Law, known as “Kendra’s Law,” was enacted by the State Legislature in 1999, and became effective November 8, 1999. This legislative enactment established court-ordered assisted outpatient treatment as a mode of treatment for some persons with mental illness. The State Legislature, in its legislative findings, stated (L 1999, ch 408, § 2, reprinted following Mental Hygiene Law § 9.60 [McKinney’s Cons Laws of NY, Book 34A, at 214-215 (2002)1):
“The legislature finds that there are mentally ill persons who are capable of living in the community with the help of family, friends and mental health professionals, but who, without routine care and treatment, may relapse and become violent or suicidal, or require hospitalization. The legislature further finds that there are mentally ill persons who can function well and safely in the community with supervision and treatment, but who without such assistance, will relapse and require long periods of hospitalization. ’ ’
Section 9.60 (c) sets forth the criteria necessary to be met to justify judicial approval of an assisted outpatient treatment plan, providing that such a plan is appropriate if the court finds, inter alia, that the patient is, as a result of his or her mental illness, unlikely to voluntarily participate in the recommended treatment pursuant to the treatment plan. Respondent argues that respondent’s voluntaxy participation in the treatment plan since February 2004 prevents petitioner from establishing the criterion that the respondent is “unlikely to voluntarily participate in the recommended treatment . . . plan.” (Mental *707 Hygiene Law § 9.60 [c] [5].) Petitioner argues, without citing any authority to support, that “[o]nce the case is referred by petition to the Court, the voluntary agreement has been clinically ruled out and is not an option for the Court to entertain.” The statutory requirement that facts be alleged to support “petitioner’s belief that the person who is the subject of the petition meets each criterion” (Mental Hygiene Law § 9.60 [e] [2] [ii]) is in furtherance of the constitutional safeguards acknowledged in the statutory enactment that permits the limitation of the patient’s liberty interest only if this court finds by clear and convincing evidence that the subject of the petition meets the criteria for assisted outpatient treatment. In order to obtain an assisted outpatient treatment order pursuant to Kendra’s Law, the petitioner must prove at a court hearing, by clear and convincing evidence, that the patient meets each of the criteria enumerated in Mental Hygiene Law § 9.60 (c). (Matter of K.L., 1 NY3d 362 [2004]; Matter of Anthony F., 306 AD2d 345 [2003]; Matter of Manhattan Psychiatric Ctr., 285 AD2d 189, 196 [2001]; Matter of Dailey, 185 Misc 2d 506 [2000]; see, also, Matter of K.L., 302 AD2d 388 [2003]; Cohen v Anne C., 301 AD2d 446 [2003]; Mental Hygiene Law § 9.60 [j] [2].) The issue is whether there is clear and convincing evidence to support petitioner’s claim that respondent will not participate in the recommended treatment in the absence of a court order.
Respondent was diagnosed with “chronic paranoid schizophrenia and cannabis abuse” in 2002. Prior to his last admission in 2004, respondent was hospitalized in July 2003, and subsequently was rehospitalized at Holliswood from October 30 through December 4, 2003. Notwithstanding respondent’s current voluntary participation since February 24, 2004, an almost three-month period, which could be a predictor of continued compliance, the testimony of Dr. Henry Kalir, respondent’s treating psychiatrist, suggests otherwise. Dr. Kalir testified, in answer to the court’s query as to “From February until now, has there been noncompliance?”:
“From February, no. However, if you take a look at the pattern, your Honor, you see that there has been noncompliance about every — from October to January, so there’s been compliance for four months and then noncompliance. When noncompliant, [respondent] becomes very threatening and with potential violence towards his family members. And that there is a clear pattern from the record from his *708 hospitalization. So the fact that he has been compliant over the past two months is basically in line with his pattern of some compliance for several months and noncompliance with rapid decompensation.”
As the suggested pattern is not so evident, there is a serious question of whether this evidence, standing alone, is sufficient to meet the “clear and convincing” standard. Although the record before this court indicates that at most three months elapsed following respondent’s July 2003 hospitalization, there is no evidence of any period of compliance or noncompliance during the interval prior to his October 30th hospitalization, although the latter can be presumed from the need for hospitalization. Moreover, respondent was hospitalized for at least one of the four months from October to January, a period of compliance relied upon by Dr. Kalir to demonstrate a pattern of compliance for an extended period. The brevity of the period between respondent’s December 4, 2003 discharge and his January 14, 2004 rehospitalization that extended to February 24, 2004, when compared to the significant period of compliance following discharge, clearly does not demonstrate a “pattern of some compliance for several months and noncompliance with rapid decompensation.” Petitioner thus failed to meet her burden of establishing, by clear and convincing evidence, the criterion at issue.
The record, in fact, shows that respondent has willingly and voluntarily participated for a sustained period in the very treatment program that is proposed to be ordered by this court. This evidence far outweighs the scintilla of evidence to support petitioner’s claim that respondent is “unlikely to voluntarily participate in the recommended treatment plan,” a criterion that must be established to the satisfaction of the court as a condition precedent to issuing a court order. As argued by respondent’s counsel:
“This is a civil liberties issue, his liberty and freedom, and for him to be subjected to a court order when he is showing compliance for a long period of time would be inappropriate. I would agree with that characterization, however, this is more than a willingness; this is actually actions taken by my client, that show more than just a willingness, but an actual positive step and responsibility towards fulfilling the treatment that’s been proposed. He’s not just stating it, he’s living it.”
*709 As argued by respondent’s attorney, the circumstances presented here support a less restrictive alternative. (See, Matter of K.L., supra.)
Petitioner’s counsel, Julie Stoil Fernandez, Esq., in support of a court-ordered assisted outpatient treatment program and in opposition to a voluntary program, sought to distinguish the court-ordered assisted outpatient treatment program from a voluntary program, as follows:
“Here’s the difference, your Honor. If the patient is compelled to be part of this program, there is a monitoring system that’s in place through the intensive care management, through the day treatment program and through the people who administer medications to him. If he fails to attend his program, if he fails to make his meeting with his ICM, if he demonstrates a decompensation as a result of either getting high or just a change in his psychiatric illness through the medication, it affords the opportunity to bring him in more quickly for an evaluation or to intercede in some way to help him restore compliance, rather than waiting to the point that he’s going to deteriorate so badly he requires inpatient hospitalization. This is a preventative program designed to try to help patients stay with compliance, rather than to deteriorate to the point that they wind up with a month, two month admission in a hospital because nobody got to them in time and they had to call 911 finally to intercede.”
Mr. Tini, respondent’s attorney, however, countered:
“Your Honor, just for — I agree for the most part what Ms. Fernandez, the way she described the program and the effect and order. However, I’d also like to point out that anywhere along this process, his parents, the ICM or any other concerned party, if they noticed — if a decompensation were to occur, anyone is free to call the authorities or call 911 and have an ambulance come and bring him to the hospital, just like it happened in the past, it has happened on other occasions, where that is the mechanism by way [respondent] was brought into the hospital and evaluated and subsequently hospitalized. So, there is a mechanism in place that allows that to happen.”
He argues that the facts of this case warrant a less restrictive alternative than a court-ordered assisted treatment plan and *710 concludes that a voluntary assisted treatment plan is the less restrictive alternative. This court agrees.
Based upon the foregoing, it is the holding of this court that where, as here, a patient has voluntarily, consistently and continuously participated in a proposed treatment plan for a substantial period of time prior to the filing of a petition for an order authorizing assisted outpatient treatment plan, the petitioner fails to establish the statutory criterion that the former patient is “unlikely to voluntarily participate in the recommended treatment plan.” Accordingly, respondent’s motion to dismiss the petition is granted, and the petition hereby is dismissed.